734 A.2d 833

**RELIANCE INSURANCE COMPANY and Reliance Surety Company, Appellees,**

v.

**PENN PAVING, INC., A Pennsylvania Corporation, Rocco A. Scigliano and Anna Scigliano, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided July 20, 1999.

440

John P. Lacher, Robert O. Lampl, Pittsburgh, for appellants.

Avrum Levicoff, Elizabeth Deemer, Diane Wainwright, for appellees.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal by Penn Paving, Inc., Rocco Scigliano and Anna Scigliano from the Superior Court's order vacating the judgment entered in favor of Anna Scigliano by the Allegheny County Common Pleas Court. For the following reasons, we reverse the order of the Superior Court and reinstate the judgment of the common pleas court.

On September 11, 1989, Penn Paving, a Pennsylvania corporation engaged in the construction business, entered into a construction contract with the Public Parking Authority of the City of Pittsburgh for rehabilitation of the Mellon Square Parking Garage. On May 11, 1990, Penn Paving entered into a contract with the Urban Redevelopment Authority of Pittsburgh for site preparation of the Penn–Liberty Cultural District Site. Both contracts required that performance and payment bonds be issued on behalf of Penn Paving as the principal, naming the Public Parking Authority and Urban Redevelopment Authority as obligees respectively. Reliance Insurance Company and Reliance Surety Company (Appellees referred to collectively as Reliance) issued the performance and payment bonds in both contracts.

The performance bonds issued in connection with the contracts provided that if Penn Paving failed to faithfully perform the contract and failed to satisfy claims arising therefrom, Reliance would be obligated to satisfy such claims up to the penal sum of the bond. The penal sum of the bond issued on the contract with the Public Parking Authority was $3,497,-123.45; and on the contract with the Urban Redevelopment Authority was $1,792,428. On December 20, 1990, Penn Paving gave written notice of default on both contracts. Because of the default, Reliance undertook as surety to complete the projects.

Reliance subsequently commenced an action in common pleas court against Penn Paving, Rocco Scigliano and Anna Scigliano to recover costs and expenses incurred in the performance of its obligations as surety under the bonds. In its

complaint, Reliance asserted that Penn Paving, by its president Rocco Scigliano, and Rocco Scigliano and Anna Scigliano, individually and as husband and wife, had agreed to indemnify and save harmless Reliance against all demands, claims, loss, costs, damages, expenses and attorneys fees and any liability therefor sustained or incurred by Reliance in connection with any bonds executed on behalf of Penn Paving, pursuant to an indemnification agreement that was executed on August 7, 1984. Reliance further asserted that, as a result of Penn Paving's December 20, 1990 default on the two contracts, Rocco Scigliano had executed a second indemnification agreement on the date of default which also contained an obligation of Penn Paving and Rocco Scigliano to reimburse Reliance for any loss, cost or expense incurred in performing as a surety under the bonds. Anna Scigliano was not a signatory to the 1990 indemnification agreement. Reliance sought to recover damages in excess of $1.5 million plus interest and attorneys fees.

Among their defenses, Appellants asserted in their answer and new matter that Anna Scigliano did not have an obligation to indemnify Reliance because she was not a party to the December 20, 1990 indemnification agreement and because Reliance, through its agent, had been notified of Mrs. Scigliano's withdrawal as a responsible party from the 1984 indemnity agreement as a result of the marital separation and pending divorce proceedings of the Sciglianos. It was asserted also that Reliance knew that Mrs. Scigliano had no involvement in the contracts which were the subject of Penn Paving's default since she did not sign the bonds issued in connection therewith. Furthermore, it was asserted that Mrs. Scigliano was no longer an employee, officer or shareholder of Penn Paving.

The matter proceeded to a non-jury trial. The issues of liability and damages were bifurcated. The parties stipulated to the admissibility of several documents, including the Continuing Agreement of Indemnity—Contractor's Form which was executed on August 7, 1984, the payment performance bonds on each of the defaulted projects, and the December 20,

1990 Agreement with Reliance which was executed with, inter alia, Penn Paving and Rocco Scigliano.[1]

Reliance rested its case on liability after introducing the documents into evidence. Appellants' counsel stipulated that, if Reliance were able to establish damages, Penn Paving and Rocco Scigliano were liable for those damages. As to Mrs. Scigliano, however, counsel made a motion for the entry of a non-suit in her favor. The motion for non-suit was taken under advisement, but eventually was denied.

The trial continued as to the limited issue of the liability of Mrs. Scigliano under the Continuing Agreement of Indemnity that she had signed in 1984.[2] The defense produced two witnesses, Rocco Scigliano and Anthony R. Gusic. From 1973 to 1993, Gusic was employed by Edward F. Haldeman & Associates, Inc. The Haldeman agency was the broker of record for the bonding requirements of Penn Paving.

Rocco Scigliano, the president and sole stockholder of Penn Paving, testified that Reliance was selected by Anthony Gusic when Penn Paving required a bonding line for its construction projects. Mr. Scigliano testified that the amount of the bonding line procured from Reliance in 1984 was approximately $150,000 to $200,000. At that time, Anna Scigliano acted as the corporate secretary for Penn Paving.

The Sciglianos became estranged in 1986. Mr. Scigliano testified that he contacted Anthony Gusic to inform him during the divorce proceedings that Anna had demanded that she be removed from obligations to bonding and banking companies and that he secure new financing under his own name. Mr. Scigliano requested that a meeting with Reliance be scheduled to discuss the change. A meeting was later

1. The December 20, 1990 Agreement was also signed on behalf of Rockway Construction Company by its secretary, Nathan Scigliano, the Scigliano partnership, and Rocco Scigliano, Nathan Scigliano and Kris Scigliano as partners of the Scigliano Partnership.

2. Reliance proceeded against Anna Scigliano under the 1984 agreement only. At trial, Reliance indicated that it was not making a claim against Mrs. Scigliano on the 1990 Agreement to which she was not a party.

arranged with Randy Leiminger, the bond manager for Reliance's Pittsburgh office.

There is no dispute that the scheduled meeting took place; however, there was contradictory testimony as to whether the subject of divorce proceedings was discussed at the meeting. Mr. Scigliano testified that when he met with Gusic and Leiminger, he informed them that Mrs. Scigliano was no longer obligated on the bonding line and that they had to see about bonding to be done on the basis of his own financial statements. Mr. Scigliano further testified that they indicated that he could get bonded because he was strong enough to get bonded without Mrs. Scigliano, and that from that day forward all financial statements were done in his name only. He stated that before 1986, the largest bonding line that Penn Paving had was for $500,000. In 1989 or 1990, Penn Paving had a bonding line for $3.5 million, followed eight months later by an additional bonding line of $1.9 million.

Anthony Gusic testified that Reliance was the sole source of bonding for Penn Paving in the 1980s and through 1990, with the Haldeman agency as broker of record. Gusic was the primary individual who dealt with Reliance for Penn Paving. Gusic testified that he brought the fact of the Sciglianos' estrangement to Reliance's attention, that the purpose of the meeting with Leiminger was to discuss the divorce and Mr. Scigliano's ability to handle bonds without Mrs. Scigliano, and that he felt it was clear at the meeting that Mrs. Scigliano was not involved with Penn Paving. Gusic also testified that after the meeting, Reliance did not make any requests for financial information relating to Mrs. Scigliano, although financial information relating to Mr. Scigliano and Penn Paving was requested. Reliance reviewed Mr. Scigliano's financial statements on a fairly regular basis.

After the defense rested as to liability, Reliance called Randy Leiminger to testify. Leiminger, a Reliance bond manager from September 1986 to March 1993, was responsible for the production and underwriting of surety and fidelity bonds. Leiminger testified that Haldeman Associates was the broker of record for the Penn Paving account. As broker of

record, Haldeman was responsible for the ongoing servicing of the account. Haldeman administered the account on behalf of Reliance and would obtain the necessary financial information for Reliance. Leiminger testified that Haldeman would be speaking on behalf of Reliance in its dealings with the accounts.

Leiminger testified that he met Mr. Scigliano for the first time at the meeting with Gusic. Leiminger could not recall whether the pending divorce was discussed at that meeting, although he thought that the subject came up later in telephone conversations with Gusic. Leiminger's recollection of the meeting was that they discussed the latest financial information that was in the file and that he asked Mr. Scigliano general questions about the progress of certain jobs. He described the meeting as a "general overall physical update on the account."

On October 17, 1995, the trial judge entered judgment in favor of Reliance against Mr. Scigliano and Penn Paving only. The trial judge found that the increase in the bonding line from approximately $150,000 to $200,000 when the 1984 Agreement was executed to an amount in excess of $5 million in 1990 was a material modification of Mrs. Scigliano's risk under the 1984 Agreement. The trial judge concluded that this material modification constituted a discharge of Mrs. Scigliano from her obligation under the agreement, citing *Continental Bank v. Axler*, 353 Pa.Super. 409, 510 A.2d 726 (1986), appeal dismissed as having been improvidently granted, 518 Pa. 58, 540 A.2d 267 (1988). Reliance filed a motion for post-trial relief, which was denied by order dated June 12, 1996.

On appeal, the Superior Court reversed in a memorandum opinion.[3] The Superior Court found that the trial court's

---

3. At page 10 of its opinion, the Superior Court stated that "[p]ursuant to the 1984 Agreement..., we believe that Anna remains contractually liable as a surety under the latter Agreement despite the lack of her signature on the 1990 Agreement." This conclusion is contradicted by the record itself. As noted above, Reliance's counsel specifically stated that it was not seeking to impose liability upon Mrs. Scigliano under the

conclusion that the increased risk of liability constituted a material modification so as to discharge Mrs. Scigliano from further obligation under the 1984 Agreement constituted a misapplication of the law of material modification as set forth in *Continental Bank*. The Superior Court concluded that the 1984 Agreement contemplated increased risks of bonding liability of the signatories thereto, and that as a signatory to the agreement Mrs. Scigliano waived all notices, including those of increases in her risk of liability on bonds, and waived any defenses to any claim against her as indemnitee, including the defense of material modification. The judgment in favor of Mrs. Scigliano was vacated.

We granted the petition for allowance of appeal filed on behalf of Penn Paving, Rocco Scigliano and Anna Scigliano, limited to the issue of whether Superior Court erred in finding that a material modification of Mrs. Scigliano's risk by an increased bonding line in 1990 did not discharge her from her obligations under the indemnity agreement executed in 1984.

 A contract of suretyship is between the principal debtor and the surety. *Trident Corporation v. Reliance Insurance Co.*, 350 Pa.Super. 142, 504 A.2d 285 (1986). "A suretyship is evidenced by a contract and represents a three-party association where a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety." *General Equipment Manufacturers v. Westfield Insurance Company*, 430 Pa.Super. 526, 635 A.2d 173, 180 (1993), appeal denied 537 Pa. 663, 644 A.2d 1200 (1994).

As it undertook certain construction projects, Penn Paving was required to provide performance and payment bonds. In 1984, Reliance agreed to execute or procure the execution of

terms of the 1990 Agreement because she was not a party to that agreement. R. 161a.

It is unclear from the Superior Court's opinion to what extent its belief as to the effect of the 1990 Agreement influenced its conclusion that the judgment in favor of Mrs. Scigliano should be vacated. In addressing the issue before this Court, however, we have accepted the representation of Reliance's counsel to the trial court that Mrs. Scigliano's liability is not premised upon the 1990 Agreement.

such bonds as surety for Penn Paving upon the express condition that Penn Paving execute a form contract designed for contractors, titled as a Continuing Agreement of Indemnity. In addition to Penn Paving, Reliance required that the indemnity agreement be signed by Rocco Scigliano and Anna Scigliano, as individuals. Pursuant to the second paragraph of the indemnity agreement, Penn Paving and the Sciglianos were obligated

> [to] indemnify, and keep indemnified, and hold and save harmless the Surety (Reliance) against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other bonds, which may be already or hereafter executed on behalf of the Contractor (Penn Paving), or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

R.109a.

Appellants assert that the Superior Court erred in finding that a material modification of Mrs. Scigliano's risk by the increased bonding line in 1990 did not discharge her from her obligations under the 1984 Agreement. When the agreement was executed in 1984, the bonding line did not exceed $200,-000. Appellants assert that while Mrs. Scigliano agreed pursuant to the 1984 Agreement to provide continuing indemnification as to bonds issued under the agreed bonding line of $200,000, Mrs. Scigliano in no way consented to material increases in her liability. Nor did she waive notice in regard to increases in her risk. Appellants contend that the subsequent increase in the risk from $200,000 to $5 million without her knowledge, six years after the 1984 Agreement was exe-

cuted, was not something she consented to impliedly or by the express terms of the agreement.

Reliance argues that Mrs. Scigliano agreed to indemnify it for amounts due on all future bonds, even those she did not know about. To the extent that the increases in the amount of bonding constituted material modifications, Reliance asserts that Mrs. Scigliano agreed to such material modifications when she signed the 1984 indemnity agreement. Reliance argues that based on the plain and unambiguous language of the agreement, Mrs. Scigliano specifically consented to changes in the bonds and waived notice of any and all such changes. Additionally, Reliance claims that she waived notice of liability and agreed to be continually liable to Reliance on all new bonds issued to Penn Paving—including the 1990 bonds issued in connection with the construction projects for the Public Parking Authority and the Urban Redevelopment Authority.

The Superior Court vacated the judgment entered in Mrs. Scigliano's favor based upon its conclusion that the trial judge had misapplied the law of material modification in *Continental Bank. Continental Bank* involved an appeal from the denial of a petition to open a judgment confessed under a surety agreement. Appellants Barry and Leslie Axler were cosureties for a Continental Bank loan to North Broad Distributors, Inc., a corporation formed by the Axlers and two other couples. The Axlers argued on appeal that their surety obligation was discharged by a material modification in the relationship between Continental Bank and North Broad due to the sale of North Broad to an individual who was not a cosurety of North Broad's debt to Continental Bank.

The corporation was formed in 1976; each of the couples was given one-third interest in North Broad. North Broad later executed two notes to Continental Bank. In connection with the notes, each of the couples personally signed surety agreements obligating them to pay the debt in the event of a default by North Broad.

The Axlers sold their interest in North Broad to two individuals in 1978. Continental Bank was informed by letter that the Axlers no longer held an interest in the corporation and was requested to release the Axlers as cosureties. Continental Bank advised the Axlers they would not be released as cosureties unless the indebtedness was fully paid or satisfactory substitute security was pledged.

In 1981, North Broad renegotiated a five-year note with Continental Bank for an amount which constituted the outstanding principal and interest due on the original two notes. After the note was executed, the remaining original shareholders sold their interest in North Broad to a third party. The third party defaulted on the loan, causing Continental Bank to confess judgment against the Axlers and the other two couples.

In their petition to open the judgment, the Axlers raised as a defense that the sale of North Broad to a third party materially altered the relationship between North Broad and Continental Bank, thereby discharging the Axlers from their obligation. The trial court ruled that the change in ownership did not constitute a material modification that would discharge the Axlers as cosureties.

The Superior Court affirmed, concluding that the Axlers had not made a threshold showing of a material modification, without their consent, in the creditor-debtor relationship between North Broad and Continental Bank, and could not be discharged as sureties. The Superior Court acknowledged several longstanding principles governing suretyship agreements.

> Cognizant of the problems posed by the three-party composition of suretyships, Pennsylvania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected. A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substi-

tutes an agreement substantially different from the original agreement on which the surety accepted liability. Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged. A compensated surety is discharged only if, without the surety's consent, there has been a material modification in the creditor-debtor relationship and said modification has substantially increased the surety's risk.

353 Pa.Super. at 415–416, 510 A.2d at 729.

The Superior Court further observed, however, that material modifications in the creditor-debtor relationship will not serve to discharge the surety where the surety has given prior consent to such material modifications as part of the suretyship contract. "Where the surety has given such prior consent, the surety is contractually bound to accept the material modifications in the creditor-debtor relationship." 353 Pa.Super. at 417, 510 A.2d at 730. (Citations omitted.)

In determining whether a surety has consented to a material modification, the suretyship "contract must be given effect according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances." *Id.* The suretyship contract signed by the Axlers specifically provided that the Axlers had waived notice of any fact which might materially increase their risk, that Continental Bank had the right without notice to or consent of the Axlers to modify, change or supplement any indebtedness without affecting or discharging the Axlers' liabilities, and that the Axlers would be obligated for the liabilities of any partnership, firm, corporation or other company which may be a successor to North Broad. The Superior Court determined that by the very terms of their suretyship agreement, the Axlers had consented to be obligated for the liabilities of a successor entity to North Broad. Because the agreement specifically encompassed the modification that occurred, the Axlers remained contractually liable for the debtor's obligation.

In this case, the Superior Court concluded that Mrs. Scigliano had waived any defenses to any claim against her as indemnitee, including the defense of material modification, under the Continuing Indemnification Agreement. Further, the Superior Court found that Mrs. Scigliano had waived all notices, including those which forecasted any increase in her risk of liability on bonds.

Appellants argue that the material modification of the increase in bonding from $200,000 to $5 million was not consented to under the terms of the 1984 Agreement. Further, Appellants assert that there was no express and specific language of a waiver regarding notice of a material increase in risk in the agreement. We find Appellants' argument to be compelling. Unlike the suretyship agreement in *Continental Bank*, which contained specific language that the sureties were obligated for the liabilities of any successor entity and waived notice of "any other fact which might materially increase their risk", the 1984 Agreement signed by Mrs. Scigliano did not contain a waiver of any material modification of her risk of liability.

We are unpersuaded by Reliance's claims that the following provisions of the Continuing Indemnification Agreement constitute Mrs. Scigliano's consent to any material modification in her risk of liability without notice.

ELEVENTH: The Surety is further authorized and empowered to advance money or to guarantee loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds; and all money so loaned and advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with legal interest when due, shall be conclusively presumed to be a loss by the Surety for which each and all of the undersigned shall be responsible notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The undersigned hereby waive all notice of such advance or loan, or of any default or any

other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the undersigned to the effect and end that each of the undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the undersigned might have been or be entitled and not-withstanding any defenses which the undersigned might have been or be entitled to make.

TWELFTH: No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or of any contract referred to in such Bond or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the undersigned in executing this Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the undersigned prior to granting, authorizing or executing any assent, assignment, change or extension.

R.110a.

Paragraph 11 of the agreement prepared by Reliance contains language relating to waiver of notice of advances and loans made by Reliance to Penn Paving and waiver of notice of default or other acts by Penn Paving giving rise to liability under the bonds issued by Reliance. Pursuant to the twelfth paragraph, Mrs. Scigliano waived the right to notice of an assent, assignment, change in time or manner of payment, or other change or extension in the terms of a bond approved by Reliance. The excerpted provisions do not contain any language constituting consent to a material increase in the risk of liability to Mrs. Scigliano or language expressly waiving notice of a material modification in the risk of liability. Nor do the provisions expressly refer to a material modification of the bonding line. The absence of any specific language relating to

the increased risk of liability stands in sharp contrast to *Continental Bank*, wherein the suretyship agreement expressly provided that the Axlers had waived notice of "any other fact which might materially increase their risk."

We conclude that the Superior Court erred in finding that Mrs. Scigliano waived all notices, including those which forecasted any increase in her risk of liability on bonds, under the terms of the 1984 Continuing Indemnification Agreement. The order of the Superior Court is reversed and the judgment entered by the common pleas court in favor of Mrs. Scigliano is reinstated.