

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2008

# WRS Inc v. Plaza Ent Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1712

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"WRS Inc v. Plaza Ent Inc" (2008). *2008 Decisions.* Paper 827.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/827

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1712
_____

WRS INC,
d/b/a
WRS MOTION PICTURE LABORATORIES,
a corporation

v.

PLAZA ENTERTAINMENT, INC, a corporation;
ERIC PARKINSON, an individual;
CHARLES VON BERNUTH; JOHN HERKLOTZ, an individual

John Herklotz,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 00-cv-2041)
District Judge: Hon. Arthur J. Schwab

Submitted Under Third Circuit LAR 34.1(a)
June 6, 2008

Before: AMBRO, CHAGARES, and COWEN, <u>Circuit Judges</u>.
_____

(Filed: July 18, 2008)

_____

OPINION OF THE COURT

CHAGARES, Circuit Judge.

John Herklotz appeals two summary judgment decisions of the District Court. The first found Herklotz liable under a surety agreement, while the second fixed the amount of damages and attorneys' fees due Herklotz's opponent. We will affirm the District Court's decision on liability. We will remand the damages decision for further proceedings in light of the District Court's indication that it will, upon remand, grant Herklotz's motion for relief under Federal Rule of Civil Procedure 60(b)(6) regarding that decision.

I.

In 1996, Eric Parkinson formed Plaza Entertainment (Plaza), a company that obtained the rights to movie titles and then duplicated, distributed, and otherwise exploited those titles. Herklotz and Charles von Bernuth joined Parkinson as the three shareholders in Plaza, and Herklotz served as Plaza's C.E.O. from September 1997 to April 1998. WRS engaged in film and video duplicating services, and also administered the proceeds generated by distribution and duplication of films and videos.

Plaza initiated a business relationship with WRS in 1996. WRS often extended Plaza credit in relation to Plaza's orders, and Plaza eventually incurred a sizeable debt to WRS. In April of 1998, Plaza sought to place an order for copies of a movie entitled "The Giant of Thunder Mountain," which Herklotz produced.[1] Plaza still owed WRS a significant amount of money from past orders, however, and WRS sought to obtain some

---

[1] The eponymous Giant was played by Richard Kiel, famous for his memorable portrayal of the steel-toothed Jaws in the James Bond thrillers The Spy Who Loved Me and Moonraker.

security before extending Plaza further credit. On May 6, 1998, Herklotz provided that security by signing an unconditional personal guarantee of Plaza's debts to WRS (the Herklotz Surety).

The Herklotz Surety contract stated, in part, that Herklotz:

unconditionally guarantees complete and prompt payment, when due, of any indebtedness which may at the present time or at any time hereafter and from time to time be owing to you by [Plaza]. . . . This guaranty is direct and unconditional, and may be enforced without first resort to any other right, remedy[,] or security which you have. The undersigned waives notice of acceptance hereof, all prior notice of default and demand for payment.

You shall have the unrestricted right to renew, extend, modify[,] and/or compromise any indebtedness and to accept, substitute, surrender or otherwise deal with any collateral security or other guaranties, without notice to the undersigned and without affecting the obligation of the undersigned hereunder.

This guaranty shall continue at all times and shall remain in full force and effect until such time as you receive from the undersigned, by registered mail, written notification of revocation. . . .

Joint Appendix (JA) 36.

The Herklotz Surety was not the only such agreement entered into between the parties. On October 12, 1998, WRS and Plaza signed a Services Agreement, which provided, inter alia, that WRS would perform administrative services for Plaza, including collecting Plaza's accounts receivable; monitoring inventories; creating invoices; and performing general accounting and record keeping functions. Moreover, as part of the Services Agreement, Parkinson and von Bernuth entered into their own personal guarantees of Plaza's obligations to WRS.

3

The agreements did not work out as planned. Plaza never managed to satisfy fully its obligations to WRS, and neither Herklotz, Parkinson, nor von Bernuth made good on their personal guaranties. Accordingly, on October 13, 2000, WRS filed this action, asserting breach of contract and numerous other counts.

The procedural history of this case is complex, but only a few of the more recent events need to be discussed here – primarily those that touch upon the apportionment of liability among Plaza's principals. The District Court held a settlement conference on March 9, 2006. At this conference, the attorney representing Plaza, Parkinson, and von Bernuth (collectively, the Other Defendants) told the Court that he intended to withdraw as counsel, but would file a summary judgment motion on von Bernuth's behalf regarding von Bernuth's liability to WRS based on his personal guaranty.

The attorney, however, neither filed a motion for von Bernuth nor did he withdraw as counsel for Plaza and Parkinson – indeed, he never took any other action in the case whatsoever. WRS then filed summary judgment motions against Herklotz and pursued defaults against the Other Defendants. In April 2006, the District Court ordered the Other Defendants to show cause why defaults should not be entered against them for failure to defend, and when they did not reply, ordered the clerk to enter the defaults. Their attorney had never informed them of the show cause orders or of the defaults.

On July 21, 2006, the District Court granted WRS's motion for summary judgment regarding Herklotz's liability to WRS for Plaza's obligations. Then, on February 20, 2007, the District Court entered two relevant orders: it granted WRS's motion for

4

summary judgment against Herklotz on the issue of damages, entering judgment in the amount of $2,584,749.03; and it granted WRS's motions for default judgments in the same amount against the Other Defendants. Again, the attorney who nominally represented the Other Defendants did not notify them of the default judgments.

The Other Defendants eventually learned of the default judgments. After obtaining new counsel, they filed motions for relief of the default judgments entered against them, pursuant to Federal Rule 60(b)(6). On March 13, 2008, the District Court granted these motions. It based its decision on the woefully inadequate performance of the Other Defendants' counsel and on a showing that the Other Defendants had a "potentially meritorious defense to at least of part of WRS's claim for damages," because they submitted evidence in support of their Rule 60(b) motions "which, if presented at a trial, may result in a substantial reduction in the amount of damages recoverable by WRS" from Plaza. WRS, Inc. v. Plaza Entm't, Inc., Civ. A. No. 00-2041, 2008 WL 686773, at *12, *13 (W.D. Pa. Mar. 13, 2008). Of course, as sureties, Parkinson and von Bernuth had liability coextensive with Plaza's, and any reduction in Plaza's liability would also reduce the amount recoverable from them.

Meanwhile, on March 8, 2007, Herklotz appealed the District Court's July 21, 2006 liability ruling and its February 20, 2007 damages determination. After learning of the District Court's March 13, 2008 decision to vacate the default judgments against the Other Defendants, however, Herklotz filed his own Rule 60(b) motion regarding the February 20, 2007 decision.

5

On June 5, 2008, the District Court issued a memorandum and order stating that it would grant Herklotz's motion pursuant to Rule 60(b)(6) if we remanded the February 20, 2007 decision to it.[2]  It would do so because the Other Defendants raised a "substantial likelihood" in their successful Rule 60(b) motions that their respective liabilities to WRS would be less than the $2,584,749.03 judgment entered against Herklotz, but "as a surety for Plaza Entertainment, Herklotz's liability to WRS cannot be greater than the amount of Plaza Entertainment's obligations to WRS (or the liability of Parkinson and von Bernuth who also executed personal guaranties of Plaza Entertainment's obligations to WRS)." WRS, Inc. v. Plaza Entm't, Inc., Civ. A. No. 00-2041, 2008 WL 2323991, at *4 (W.D. Pa. June 5, 2008).  The inconsistency of an undiminished judgment against Herklotz standing alongside a reduced judgment against the other defendants "would be an obvious injustice." Id.  The District Court was careful to note that its prospective grant of Rule 60(b) relief applied only to the February 20, 2007 damages decision, and not to the July 21, 2006 liability decision.  See id. at *2 n.6.  Herklotz filed a motion to remand in short order, on June 10, 2008.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2] During the pendency of an appeal, a district court is without the power to grant a Rule 60(b) motion – it may only indicate that it would grant such a motion should the Court of Appeals decide to remand.  See Venen v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985).

When reviewing an order granting summary judgment, "[w]e exercise plenary review . . . and we apply the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278. "There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).

## III.

### A.

We deal first with Herklotz's appeal of the July 21, 2006 liability decision. Herklotz asserts that he is not liable for Plaza's debts to WRS because subsequent events rendered the Herklotz Surety inoperable. He claims that he was a gratuitous surety, and that the Services Agreement materially modified the creditor-debtor relationship between WRS and Plaza without Herklotz's consent. Therefore, the Herklotz Surety should have

7

been discharged. But even if he was not a gratuitous surety, Herklotz argues, the Services Agreement materially increased Herklotz's risk when it modified the WRS-Plaza relationship, and this increase in risk should have led the District Court to discharge the Herklotz Surety.

WRS contends that the Services Agreement did not materially modify the WRS-Plaza relationship; that even if it did, Herklotz consented to any such modification in the Herklotz Surety contract; and finally that Herklotz was a compensated surety, and the Services Agreement – even if a material modification, and even if not consented to by Herklotz – did not substantially increase Herklotz's risk as a surety.

"In general terms, a suretyship represents a three-party association wherein a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety." Cont'l Bank v. Axler, 510 A.2d 726, 729 (Pa. Super. 1986); see also RESTATEMENT OF SECURITY § 82 (1941). Sureties come in two varieties: compensated and gratuitous.

Gratuitous sureties are "motivated by selfless generosity" in guaranteeing another's debt, and so "enter[] into guaranty agreements for reasons involving familial or neighborly affection and [do] not benefit financially from the transaction." Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc., 273 F.3d 332, 336 (3d Cir. 2001). In other words, gratuitous sureties are not "otherwise interested in the transaction leading up to the suretyship contract." First Nat'l Bank of East Conemaugh v. Davies, 315 Pa. 59, 64 (1934). Gratuitous sureties are typically discharged "[w]here, without the surety's

8

consent, there has been a material modification in the creditor-debtor relationship." Reliance Ins. Co. v. Penn Paving, Inc., 557 Pa. 439, 450 (1999) (quoting Axler, 510 A.2d at 729); see also McIntyre Square Assocs. v. Evans, 827 A.2d 446, 452 (Pa. Super. 2003). A "material modification" in this context "consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." Axler, 510 A.2d at 729.

Compensated sureties, by contrast, guarantee payment to the creditor because they have an interest in the transaction that led to the suretyship contract, and therefore are discharged only when there has been a material modification without the surety's consent and that modification substantially increases the surety's risk. See J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1274 (Pa. Super. 2002).

But, critically, material modifications only have the capacity to affect suretyship contracts if the surety has not consented to the modification. See Penn Paving, 557 Pa. at 450 ("material modifications in the creditor-debtor relationship will not serve to discharge the surety where the surety has given prior consent to such material modifications as part of the suretyship contract"). This is true even for gratuitous sureties: "The Pennsylvania Supreme Court has indicated that it will not discharge gratuitous guarantors on the basis of modifications in the creditor-debtor relationship where the guarantor's consent to these changes has been obtained." Garden State Tanning, 273 F.3d at 336 (citation omitted). We determine whether the surety has granted such consent by examining the contract

9

creating the suretyship. This examination gives effect to the contract "according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances." Penn Paving, 557 Pa. at 450 (quotation marks omitted).

We hold that Herklotz consented to material modifications of the WRS-Plaza relationship. Indeed, the Herklotz Surety contract explicitly contemplated, and encompassed, the modifications of the kind effected by the Services Agreement. The contract stated plainly that Herklotz "unconditionally guarantees complete and prompt payment, when due, of any indebtedness which may at the present time or at any time hereafter" be owed to WRS by Plaza. (JA 36). Moreover, the contract provided WRS with "the unrestricted right to . . . modify . . . any indebtedness and to accept, substitute, . . . or otherwise deal with any collateral security or other guaranties, without notice to the undersigned and without affecting the obligation of" Herklotz. (Id.) (emphasis added). Thus, even assuming that the Services Agreement materially altered the business relationship between Plaza and WRS, this kind of alteration came squarely within the extremely broad language of the Herklotz Surety contract. "[I]t is well settled that a surety's consent to material modifications in the creditor-debtor relationship may be obtained as part of the suretyship contract. Where the surety has given such prior consent, the surety is contractually bound to accept the material modifications in the creditor-debtor relationship." Axler, 510 A.2d at 730. This is exactly the case here, and requires that Herklotz be held a surety for Plaza's debt to WRS. Accordingly, we need

10

not reach the issues of whether Herklotz was a compensated or gratuitous surety, whether the Services Agreement was a material modification, or whether the Services Agreement increased Herklotz's risk, to hold that the Herklotz Surety contract obligates Herklotz for Plaza's debts to WRS.

## B.

While Herklotz is liable to WRS for some amount of damages, that amount obviously cannot be larger than the total amount owed by Plaza to WRS, and may be apportioned among all of the parties who executed sureties for Plaza's debt – Parkinson, von Bernuth, and Herklotz. Accordingly, we will grant Herklotz's motion to remand the February 20, 2007 damages decision, and permit the District Court to grant Herklotz's Rule 60(b) motion regarding that decision.

## IV.

For the foregoing reasons, we will affirm the July 21, 2006 judgment of liability and remand the February 20, 2007 judgment of damages.