967 A.2d 368

KISKI AREA SCHOOL DISTRICT, a Municipal Authority

v.

MID–STATE SURETY CORPORATION, a
Michigan Corporation, and Lanmark,
Inc., a Pennsylvania Corporation

Appeal of Mid–State Surety Corporation,
a Michigan Corporation.

Supreme Court of Pennsylvania.

Argued Sept. 9, 2008.

Decided Dec. 17, 2008.

Joseph H. Bucci, Esq., Robert Joseph Burnett, Esq., Samuel Herman Simon, Esq., Houston Harbaugh, P.C., Pittsburgh, for Mid–State Surety Corporation, a Michigan Corporation.

Samuel Joseph Arena, Jr., Esq., Karl Stewart Myers, Esq., Stradley, Ronon, Stevens & Young, L.L.P., Harrisburg, for The Surety & Fidelity Association of America.

Arnd N. von Waldow, Esq., Kim M. Watterson, Esq., James Michael Doerfler, Esq., Reed Smith, L.L.P., Pittsburgh, for Kiski Area School District, a Municipal Authority.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice GREENSPAN.

We consider whether a broad release of a contractor that is silent as to any release of the contractor's surety nonetheless discharges the surety. Appellant, Mid–State Surety Corporation ("Mid–State"), appeals from the Superior Court's decision which reversed the trial court and held that the Kiski Area School District (the "School District") could pursue a performance bond claim against Mid–State, notwithstanding the School District's release of, and final payment to, bonded contractor Lanmark, Inc. ("Lanmark"). We reverse the Superior Court and reinstate the trial court's order entering summary judgment in favor of Mid–State. We hold that Mid–State's obligations vis-à-vis the School District were discharged by the School District's broad release of Lanmark.

## *FACTS*

On February 27, 1997, the School District and Lanmark entered into an agreement (the "Contract"), pursuant to which Lanmark agreed to provide services as part of the construction and renovation of the Allegheny–Hyde Park Elementary School in Allegheny Township, Westmoreland County, Pennsylvania (the "Project"). Among other provisions, Article 8.4 of the Supplementary Conditions to the Contract contained a provision that obligated Lanmark to pay the School District liquidated damages for delay in completing the Contract work.

Mid–State provided a performance bond for the Project that named Lanmark as the principal and the School District as the obligee (the "Bond"). Pursuant to Article 6 of the Bond, in the event of default by Lanmark, in exchange for payment of any remaining Contract balance, Mid–State agreed to assume responsibility to complete Lanmark's work.

As the Project neared completion, the School District became dissatisfied with the quality and timeliness of Lanmark's work. The School District declared Lanmark to be in default, withheld final payment from Lanmark, and demanded that Mid–State assume responsibility for the remaining work. The

School District failed to remit the remaining Contract balance to Mid–State.

Lanmark initiated a civil action against the School District seeking payment of the Contract balance (the "Lanmark Matter"). The School District counterclaimed against Lanmark and joined Mid–State in the Lanmark Matter. The School District also filed a separate civil action against Lanmark and Mid–State (the "School District Matter"). The School District Matter was stayed pending the resolution of the Lanmark Matter.

On July 12, 2001, following settlement negotiations, the School District and Lanmark reached a settlement that was placed on the record before the Honorable Gary P. Caruso. The parties acknowledge that neither the School District nor Lanmark mentioned Mid–State during the negotiations. The terms of the settlement, as recorded that day, were as follows:

> The Kiski Area School District shall pay to Lanmark, Incorporated, a sum of $430,000. The parties further agree that they will enter into a release that will contain the following language: That the release shall be for any and all claims that Lanmark and/or the Kiski Area School District has, have had, or may in the future have against each other, known or unknown, arising out of or relating to the construction contract dated February 27th, 1997, regarding the Allegheny/Hyde Elementary School or the construction project concerning the Allegheny/Hyde elementary school; excepting therefrom any third party tort action.

Following the hearing, counsel for the parties attempted to negotiate the language of a release. Lanmark and Mid–State requested that the release contain a proviso that the School District had released its claims against Mid–State. The School District repeatedly and emphatically refused to include this language. The School District argued that it had reserved its rights as against Mid–State. Because the parties were unable to reach an agreement on additional language, the School District and Lanmark executed a release that was limited to the *verbatim* terms of the July 12, 2001 proceeding

(the "Release"). The Release is silent as to the School District's purported reservation of rights against Mid–State.

On September 23, 2005, Mid–State filed a motion for summary judgment in the School District matter, arguing that the Release discharged Mid–State and moreover that the School District's final payment to Lanmark barred any claim on the Bond. Mid–State's motion was granted on January 25, 2008. The trial court, citing *Metropolitan Nat'l Bank v. Merchants' & Mfrs' Nat'l Bank*, 155 Pa. 20, 25 A. 764 (1893), reasoned that the broad, open-ended release of Lanmark discharged Mid–State.

The School District appealed the trial court's order to the Superior Court, which reversed. The Superior Court reasoned that there was a genuine issue of material fact relating to whether the School District reserved its rights against Mid–State. Although the Release contained no express reservation, the Superior Court adopted Section 39(b) of the Restatement of Suretyship and Guarantee (the "Restatement") and held that a reservation might be inferred from extrinsic circumstances, including the School District's repeated declaration that it would not release Mid–State. Mid–State filed a petition for allowance of appeal which was granted by this Court.[1]

1.  This Court certified four issues for appeal: (1) can the Owner of a construction project (the School District) maintain an action against its General Contractor's Performance Surety (Mid–State) where the Owner has fully released the General Contractor (Lanmark) from any and all obligations or claims in connection with the underlying project without any reservation of rights against the Surety or the consent of the Surety to the release; (2) can the Owner of a construction project effectively reserve its right to maintain an action against its General Contractor's Performance Surety after settling with and fully releasing the General Contractor from any and all obligations or claims in connection with the underlying project; (3) can the Owner of a construction project maintain an action against its General Contractor's Performance Surety where the owner has failed to preserve and tender to the Surety any *remaining contract funds, but rather paid such funds directly to its* General Contractor in contravention of the Surety's specific direction and the express terms of the Bond upon which the Owner's claim against the Surety is based; and (4) are the obligations of a General Contractor's performance Surety discharged where the owner has released the General Contractor from obligations other than the pay-

## DISCUSSION

The School District argues that it released Lanmark from future performance but did not release Mid–State from the obligation to pay for Lanmark's allegedly defective and delayed work. Therefore, because the School District believes that the Release did not fully resolve all issues relating to Lanmark's default, the School District argues that it can maintain a claim against Mid–State.

Regarding the interpretation of the Release, the School District argues that this Court should adopt the totality of the circumstances approach set forth in Section 39(b)(ii) of the Restatement. In support thereof, the School District cites *Reliance Ins. Co. v. Penn Paving, Inc.*, 557 Pa. 439, 734 A.2d 833 (1999). In *Reliance*, this Court held that it would be appropriate to examine extrinsic evidence in order to discern the true meaning of a term in a bonding agreement that permitted subsequent increases in the bonded amount. *Id.* at 840. The School District argues that, pursuant to the general rule in *Reliance*, the language of the Release must be evaluated in light of the School District's repeated refusals to release its claims against Mid–State. The School District urges the Court to look beyond the Release's terms to examine the circumstances underlying the Release.

In contrast, Mid–State argues that it was discharged from all obligations once the School District and Lanmark reached the settlement of all claims relating to Lanmark's Project work. According to Mid–State, because Mid–State stands in Lanmark's shoes, Mid–State had no remaining liability once the School District settled with Lanmark. Mid–State further argues that the School District breached the Bond's terms by making payment to Lanmark.[2]

ment of money. These four interrelated issues highlight individual facets of the larger question discussed and decided herein.

2. Mid–State argues that the School District both breached the Bond's terms and materially altered Mid–State's risk by withholding the Contract balance from Mid–State. For the purposes of this decision, we need not address this issue at length because we find in Mid–State's favor on other grounds.

Mid–State argues that the School District's failure to reserve expressly its rights in the Release is fatal to the School District's claim and that a reservation of rights must be expressly stated in a release. In support thereof, Mid–State cites *Keystone Bank v. Flooring Specialists, Inc.*, 513 Pa. 103, 518 A.2d 1179 (1986). In *Keystone Bank*, this Court held that an obligee releases a surety unless the obligee expressly reserves its rights against the surety. *Id.* at 1185. Relying on *Keystone Bank*, Mid–State argues that the Release discharged Mid–State, because there is no express reservation of rights contained in the language of the Release. Mid–State also finds support for its argument in Section 39(c)(iii) of the Restatement, which provides that a release of performance by the principal releases the surety.

This appeal raises fundamental questions relating to the nature of the surety relationship. The parties admit that the Release does not refer to Mid–State, and that prior to the execution thereof, the School District clearly communicated that it did not intend to release Mid–State. This Court must therefore decide whether the Release, despite the School District's extrinsic protestations, nonetheless discharged Mid–State as a matter of law.

Where there is a surety relationship, an obligee like the School District is entitled to performance of a contractual duty by the principal or alternatively, if the principal defaults, by the principal's surety. *Reliance*, 734 A.2d at 838 (citing *Gen. Equip. Mfrs. v. Westfield Ins. Co.*, 430 Pa.Super. 526, 635 A.2d 173, 180 (1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994)). The surety, therefore, stands in the shoes of the principal and must complete any obligation due the obligee at the time of default. *See McCarthy v. Burgess & Town Council of Bridgeport*, 299 Pa. 305, 149 A. 484, 486 (1930) (affirming the judgment of the trial court ordering that an owner remit the contract balance to the defaulting contractor's surety); *Wells v. Phila.*, 270 Pa. 42, 112 A. 867, 869 (1921) (affirming the judgment of the trial court holding that the surety stepped into the shoes of the defaulting contractor and succeeded to all the rights of the contractor). The obligee is

entitled to only one aggregate performance. *Restatement (Third) of Suretyship & Guaranty,* § 19 cmt. (a) (1996). Therefore, if, as a matter of fact, the principal has fully performed, the obligee cannot look to the surety.

If performance is only partial, the obligee may nonetheless choose to release the principal from any remaining performance. In *Keystone Bank,* this Court reiterated the well-established rule that the release of a principal releases the surety, to the same extent, unless either the surety consents to its own ongoing liability or the obligee expressly reserves its rights against the surety. 518 A.2d at 1185. This Court has long held that such a reservation must be incorporated in the language of the release itself. *Hagey v. Hill,* 75 Pa. 108, 112 (1874) ("unless the creditor reserves his remedies, he discharges the surety by compounding with the principal, and the reservation must be upon the face of the instrument by which the parties make the compromise; for evidence cannot be admitted to vary or explain the effect of the instrument"). Notwithstanding this fact, the Restatement suggests that a reservation may be inferred from "the language or circumstances of the release." *Restatement (Third) of Suretyship & Guaranty,* § 39(b)(ii) (1996). However, and importantly for this case involving a performance bond, the Restatement also notes that where a surety is not otherwise released, a surety is discharged where the principal is released from a duty other than the payment of money. *Restatement (Third) of Suretyship & Guaranty,* § 39(c)(iii) (1996).

As is set forth in the Bond, and as is typical in the construction industry, a defaulting contractor's surety is entitled to any remaining contract balance at the time the surety assumes performance of the contractor's work. *See Jacobs v. Northeastern Corp.,* 416 Pa. 417, 206 A.2d 49, 54 (1965) (holding that since a surety stands in the shoes of the contractor, the surety is entitled to the funds that would have been paid to the contractor's labor and materialmen); *U.S. Fidelity & Guaranty Co. v. United Penn Bank,* 362 Pa.Super. 440, 524 A.2d 958, 964 (1987) (noting that where a surety assumed performance on behalf of a defaulting contractor, the surety

was entitled to recover any unpaid contract balance). If the owner disperses these remaining funds and thereby impairs the surety's ability to complete the work, the surety may have a defense to assuming responsibility. *Keystone Bank*, 518 A.2d at 1186 (noting that the surety is discharged if a creditor surrenders the collateral that acted as security for the principal's debt).

In this case, the School District contracted with Lanmark to complete the Contract work, and in the event of default by Lanmark, Mid–State was obligated to complete Lanmark's performance. Mid–State, therefore, had an obligation to stand in Lanmark's shoes in the event of default. The School District was entitled only to a single performance, completed by either Lanmark or Mid–State.

Here, the School District entered into a settlement agreement with Lanmark, pursuant to which it paid Lanmark on the Contract and agreed that Lanmark would have no continuing obligations under the Contract or relating to the Project. Following execution of the Release, the School District could not seek from Lanmark damages for any defective work or delay.

Because Mid–State as surety had no greater obligation than Lanmark, the School District's broad release necessarily discharged Mid–State to the same extent as Lanmark was discharged. The School District cannot now seek liquidated damages against Mid–State, because those damages are part and parcel of the Contract obligations which the School District agreed to settle. Any finding to the contrary would violate the fundamental nature of the surety relationship. Moreover, the School District fundamentally changed the parties' relationship when it simultaneously paid the Contract balance to Lanmark while demanding completion from Mid–State. Because Mid–State stands in Lanmark's shoes, the School District could not utilize the Contract balance as a settlement payment for Lanmark while still expecting Mid–State to assume responsibility for Lanmark's work.

■ We endorse the bright-line rule set forth in *Hagey* and *Keystone Bank* and hold that any reservation of rights against

a surety on a performance bond must be expressly stated in the language of the release of the contractor. Such a rule provides predictability and reduces the need to litigate the multifaceted circumstances underlying a document that is clear on its face. The Release contains no mention of any reservation of rights against Mid–State. Both parties concede that Mid–State did not consent to ongoing liability. The School District, therefore, did not effectively reserve its right to seek damages from Mid–State.

The School District has not annunciated a sufficiently compelling basis to adopt a totality of the circumstances analysis in determining whether a surety is discharged by a release. This Court's holding in *Reliance* does not authorize a departure from the bright-line rule set forth in *Keystone* and *Hagey*, as the facts of *Reliance* are inapposite. The bond in *Reliance* contained an ambiguous term relating to waiver of notice. Unlike the bond in *Reliance,* which contained an ambiguous term that would be illuminated by extrinsic evidence of the parties' intent, the Release here was clear. The parties concede that the Release does not address Mid–State. Therefore, *Reliance* is not instructive.

Contrary to the School District's argument, the Restatement also provides it no relief. Section 39 of the Restatement codifies the general rule that the release of a contractor discharges the surety. In Section 39(b), the Restatement describes two methods by which an owner might preserve rights against the surety: consent or a reservation of rights. Although Section 39(b)(ii) suggests that the reservation might be inferred from the circumstances, that section also reiterates the general rule that a surety is discharged by a release of the contractor. Most importantly, notwithstanding the two methods described in Section 39(b), the Restatement states that there can be no reservation in certain circumstances. These circumstances are described in Section 39(c). In Section 39(c)(iii), the Restatement states that there can be no reservation where the owner releases the contractor from performance. In such a circumstance, regardless of any attempt to reserve rights, the surety is discharged. Section 39(c)(iii) applies squarely to the facts of this case.

Accordingly, although Section 39(b)(ii) of the Restatement indicates that a reservation may be inferred from extrinsic evidence, that exception simply does not apply in this case. As Mid–State points out, Section 39(c)(iii) of the Restatement indicates that a surety is discharged when the principal is released from a duty other than the payment of money. Here, the School District released Lanmark from any performance relating to the project, and in so doing, released Mid–State pursuant to Section 39(c)(iii) of the Restatement. Given the language of the Restatement and the comments thereto that structure Section 39 as a series of interrelated clauses, it is untenable to read its sections as functioning independently. The Superior Court therefore erred in adopting Section 39(b)(ii) while ignoring Section 39(c)(iii).

Moreover, the Bond clearly entitled Mid–State to any remaining contract balance at the time the School District declared Lanmark to be in default. Notwithstanding direction to provide the remaining Contract balance to Mid–State, the School District retained these funds and ultimately paid them to Lanmark as part of the settlement between the School District and Lanmark. Although the School District argues that the remaining funds did not constitute a "final payment," the semantics are irrelevant. The School District's action impaired Mid–State's ability to complete the Project work. The School District cannot have it both ways: either it retained the Contract funds and negotiated a full settlement with Lanmark that absolved Mid–State's responsibility; or else the School District had to remit the funds and allow Mid–State to complete the Project and separately resolve any entitlement to payment by Lanmark. The School District is not now entitled to relief from Mid–State when the School District opted to retain the Contract balance and negotiate a settlement with Lanmark.

## CONCLUSION

Accordingly, we hold that the School District's complete release of any future performance by Lanmark fully dis-

charged Mid–State from any obligation under the Bond. We therefore reverse the Superior Court and reinstate the order of the Court of Common Pleas of Westmoreland County entering summary judgment in favor of Mid–State.

Justice McCAFFERY did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice SAYLOR, EAKIN and BAER join the opinion.

Justice TODD files a concurring opinion.

Justice TODD, concurring.

I concur in the Majority's disposition of the instant case, as I agree Mid–State's obligations with regard to the School District were discharged by the School District's release of Lanmark. I write separately, however, because I believe this Court should adopt expressly Section 39 of the Restatement (Third) of Suretyship and Guaranty ("Restatement"), and that under Section 39, summary judgment should be entered in favor of Mid–State.[1]

The Majority, citing this Court's decision in *Keystone Bank v. Flooring Specialists*, 513 Pa. 103, 518 A.2d 1179 (1986),

1. The text of Section 39 of the Restatement is as follows:

§ 39. Release of Underlying Obligation

To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:

(a) the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor unless the terms of the release effect a preservation of the secondary obligor's recourse (§ 38);

(b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:

(i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or

(ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor;

(c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:

states that an obligee's reservation of rights against a surety must be express. Quoting *Hagey v. Hill,* 75 Pa. 108 (1874), the Majority goes on to conclude that an express reservation must be on the face of the instrument by which the parties make the compromise, and that evidence cannot be admitted to vary or explain the effect of the instrument. *See* Majority Op. at 372. However, immediately following the statement in *Hagey* quoted by the Majority, this Court acknowledged that "parol evidence might be given to show that an agreement, which would by itself operate to release the surety, was not to have that effect." *Hagey,* 75 Pa. at 112. Thus, *Hagey* itself suggests an inconsistency in our law regarding whether, in order to be express, a reservation of rights against a surety must be included within the language of a release of a principal obligor by an obligee, and the admissibility of parol evidence with respect thereto. *Cf. Reliance Ins. Co. v. Penn Paving, Inc.,* 557 Pa. 439, 450, 734 A.2d 833, 838 (1999) ("In determining whether a surety has consented to a material modification, the suretyship 'contract must be given effect according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, *due regard being had also to the surrounding circumstances.*'" (emphasis added)).

Furthermore, I believe that Section 39 of the Restatement strikes an appropriate balance in protecting the rights of both obligee and surety under circumstances which, due to hastened efforts between parties to reach a complete or partial settlement, often lead to disputes such as that in the instant case. *See, e.g.,* 4 *Bruner and O'Connor on Construction Law,* § 12:2 (recognizing the complexity of suretyship law in construction cases due to the cumulative effect of, *inter alia,*

    (i) of the value of the consideration for the release;
    (ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and
    (iii) that the release discharges a duty of the principal obligor other than the payment of money;
    (d) the secondary obligor has a claim against the obligee to the extent provided in § 37(4).

"[t]he technical nature of factual issues addressing design adequacy and construction conformance, which typically require the assistance of experts to investigate and analyze correctly" and "[t]he limited amount of time and facts typically available for decision-making amid the smoke of competing contentions between the obligee and contractor"). Allowing an obligee to show, under Section 39(b), its intent to retain its claim against a surety, by virtue of the language or circumstances of the release,[2] protects parties who willingly settle their claims in a timely fashion, while Section 39(c) properly limits the extent to which a surety may be held liable in cases such as the present one where the discharge involves a non-monetary duty.

Nevertheless, I conclude, as the Majority suggests, the School District is not entitled to relief under Section 39 because, even if the School District's reservation of rights against Keystone could be inferred from the circumstances pursuant to Section 39(b)(ii), as held by the Superior Court, the School District's release of Lanmark from its performance obligation discharged Mid State from its surety obligation under Section 39(c)(iii). For these reasons, I concur in the result.

---

2. Indeed, I believe the facts of the instant case present another basis for the introduction of parol evidence. It has been suggested that while "[p]arol evidence is inadmissible to show that a written agreement with the principal obligor releasing or giving the principal [an extension of] time was subject to a reservation of rights against the surety[,] when a settlement has been made by the creditor with the principal obligor otherwise than in writing, it may be shown by parol [evidence] that it was made subject to a reservation of rights against the surety." 23 *Williston on Contracts*, § 61:23 (4th ed.2008). As the Majority notes, the release executed between the School District and Lanmark was limited to the verbatim terms of an *oral* settlement agreement, reached following oral settlement negotiations, which was recorded on the record on July 12, 2001. *See* Majority Op. at 369–70. Thus, the School District's release of Lanmark arguably was "otherwise than in writing," and, in my view, would warrant the admission and consideration of parol evidence to allow the School District an opportunity to demonstrate a reservation of rights against Mid–State.