J.F. WALKER COMPANY,
INC., Appellant,

v.

EXCALIBUR OIL GROUP, INC., and
James F. Schons, Individually.

Superior Court of Pennsylvania.

Argued Oct. 23, 2001.
Filed Feb. 20, 2002.

Jannette D. Simmons, Pittsburgh, for appellant.

Saul Davis, Pittsburgh, for appellees.

Before DEL SOLE, P.J., FORD ELLIOTT and ORIE MELVIN, JJ.

ELLIOTT, J.

¶ 1 This is an appeal from a judgment entered January 19, 2001 following the trial court's affirmance of its non-jury verdict in a breach of contract case. For the reasons that follow, we vacate that judgment and remand for entry of judgment in favor of appellant in an amount to be determined by the trial court.

¶ 2 The factual and procedural history of this case can be briefly stated. J.F. Walker Co., Inc. ("seller") is the successor-in-interest to Standard Distributors, Inc. d/b/a/ Whitman Candy Company ("Standard Distributors"). In April of 1996, Standard Distributors entered into a confidential credit application and agreement with Excalibur Oil Group, Inc. ("buyer"). This agreement allowed buyer to establish an account with seller for the purchase of sundries such as cigarettes, candy, and snack foods for the convenience stores buyer ran in connection with the gasoline service stations it leased and operated. The agreement included a guaranty executed by James F. Schons ("surety"), buyer's president and sole shareholder, personally and unconditionally guaranteeing payment of any and all debts buyer owed to Standard Distributors.

¶ 3 In July of 1996, Standard Distributors was dissolved and liquidated, and its assets were distributed to its sole shareholder, seller, by way of an assignment and transfer of all assets, including accounts receivable. From July of 1996 through November of 1996, buyer continued to accept goods delivered by seller instead of Standard Distributors, and paid seller's invoices for the goods. In November of 1996, however, buyer began to experience financial difficulties and stopped paying the invoices in full. By January 14, 1997, buyer owed seller $54,241.77 for goods delivered. As a result, seller dealt with buyer only on a C.O.D. basis from January 1997 until some time in early 1998, when buyer's stores closed.

¶ 4 On March 22, 1999, seller filed a three-count complaint against buyer and surety: 1) breach of contract against buyer; 2) breach of contract against surety; and 3) *quantum meruit* against buyer. The trial court, the Honorable Richard G. Zeleznik, held a non-jury trial on September 20, 2000, after which he entered an order on October 6, 2000 finding "for the defendants." In response, seller filed a motion for post-trial relief. Judge Zeleznik then filed an opinion on December 6, 2000 in which the only issue he addressed in any detail was surety's liability to seller under the guaranty agreement, and stated, "The Non–Jury Verdict dated October 3, 2000 was a proper disposition." Seller timely filed this appeal on December 19, 2000.[1]

¶ 5 Seller raises the following issues on appeal:

I. WHETHER THE HONORABLE TRIAL JUDGE COMMITTED AN ERROR OF LAW AND/OR ABUSED HIS DISCRETION WHEN RULING IN FAVOR OF EXCALIBUR ON THE BREACH OF CONTRACT CLAIM ASSERTED BY J.F.

1. Because judgment had not been entered at the time the appeal was filed, this court's Central Legal Staff contacted seller's attorney, advising her to enter judgment on the verdict and to provide this court with a certified copy of the docket reflecting entry of judgment. Seller's attorney has complied with this court's request and judgment was entered on January 19, 2001; therefore this appeal is properly before us. Pa.R.App.P. 301, 42 Pa. C.S.A.; Pa.R.App.P. 905(a), 42 Pa.C.S.A.; *Minich v. City of Sharon,* 325 Pa.Super. 178, 472 A.2d 706, 707 (1984) ("The Rules of Appellate Procedure provide for a legal fiction—the Notice of Appeal relates forward to the day of the entry of judgment.").

WALKER, WHERE THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL ESTABLISHES THAT EXCALIBUR BREACHED THE TERMS OF AN AGREEMENT TO PAY FOR GOODS PROVIDED IN ACCORDANCE WITH J.F. WALKER'S INVOICES BY FAILING TO PAY J.F. WALKER'S INVOICES FOR GOODS WHICH WERE PROVIDED TO AND ACCEPTED BY EXCALIBUR?

II. WHETHER THE HONORABLE TRIAL JUDGE COMMITTED AN ERROR OF LAW AND/OR ABUSED HIS DISCRETION WHEN RULING IN FAVOR OF EXCALIBUR ON THE QUANTUM MERUIT CLAIM ASSERTED BY J.F. WALKER, WHERE THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL ESTABLISHES THAT EXCALIBUR RETAINED THE BENEFITS OF GOODS PROVIDED BY J.F. WALKER WITHOUT PAYING VALUE FOR SUCH GOODS?

III. WHETHER THE HONORABLE TRIAL JUDGE COMMITTED AN ERROR OF LAW AND/OR ABUSED HIS DISCRETION WHEN DETERMINING THAT THE GUARANTY SIGNED BY SCHONS WAS NOT ENFORCEABLE BY J.F. WALKER AGAINST SCHONS, WHERE THE GUARANTY WAS TRANSFERRED TO J.F. WALKER BY WAY OF A CORPORATE DISTRIBUTION AND/OR ASSIGNMENT, WHERE THE GUARANTY DID NOT STATE THAT IT WAS NOT ASSIGNABLE AND DID NOT REQUIRE SCHONS' CONSENT TO THE ASSIGNMENT, AND WHERE THERE WAS NO MATERIAL MODIFICATION IN THE CREDITOR–DEBTOR RELATIONSHIP WHICH DISCHARGED SCHONS OF HIS OBLIGATIONS UNDER THE GUARANTY?

Appellant's brief at 4.

■ ¶ 6 We review a claim that the verdict is against the weight of the evidence by asking whether the trial court abused its discretion. A challenge to the weight of the evidence requires the assessment of the credibility of testimony offered by the verdict winner, and requires that the verdict be so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Thompson*, 538 Pa. 297, 316, 648 A.2d 315, 324 (1994). In addition, this court has held that "We are not free to answer the underlying question of whether we believe that the verdict is against the weight of the evidence...." *Commonwealth v. Ragan*, 439 Pa.Super. 337, 653 A.2d 1286, 1287 (1995).

■ ¶ 7 "Three elements are necessary to plead properly a cause of action for breach of contract: '[ (1) ] the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa.Super.2000), quoting *CoreStates Bank Nat'l. Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.1999). Additionally, it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties. John Edward Murray, Jr., Cases and Materials on Contracts 184 (3rd ed.1983) (citation omitted).

■ ¶ 8 In this case, in addition to the evidence of a written credit application and

agreement between Standard Distributors and buyer, seller presented its invoices for goods buyer accepted following Standard Distributor's dissolution. Surety, as president and sole shareholder of buyer, admitted that buyer received invoices and goods from seller with seller's name on the invoices, and that buyer continued to accept and pay for seller's goods, in whole or in part. (Notes of testimony, 9/20/00 at 46–48.) Seller also introduced into evidence statements showing amounts due and owing for goods delivered to two of buyer's convenience stores in the amounts of $25,184.74 and $29,057.03, and surety admitted he was aware buyer had not made those payments. (*Id.* at 48–49.) Seller's agent testified that in his meetings with surety, surety never indicated that the goods had not been delivered or were unsatisfactory, or that buyer did not owe the amounts reflected on the invoices and statements. (*Id.* at 37–38.) Thus, the verdict winners, buyer and surety, presented absolutely no evidence challenging seller's claims for breach of contract. As a result, we find the trial court abused its discretion when it found in favor of buyer and surety on the breach of contract counts.

¶ 9 Similarly, buyer and surety presented absolutely no evidence challenging seller's claim for damages under its theory of *quantum meruit* or unjust enrichment. To establish such a claim, seller was required to prove a benefit conferred on the defendant by the plaintiff, appreciation of such benefit by the defendant, and acceptance and retention of such benefit under circumstances that would create an inequity if defendant retained the benefit without payment. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999) (citation omitted). "In determining whether the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id.* at 1204.

¶ 10 In this case, surety, as buyer's president, admitted that buyer accepted seller's goods and did not pay for them, and seller presented evidence that it expected to be paid for the goods. (Notes of testimony, 9/20/00 at 33–34.) Furthermore, the trial transcript contains nothing indicating buyer believed it was not obligated to pay for the goods. Thus, we find the trial court abused its discretion when it found in favor of buyer on the *quantum meruit* count.

¶ 11 In its third issue, seller claims the trial court committed an error of law when it found surety's guaranty unenforceable by seller. According to the trial court, the guaranty was a "special guaranty," which ran solely to Standard Distributors and therefore could not be enforced by seller. (Trial court opinion, 12/6/00 at 2.) Furthermore, according to the trial court, surety was an uncompensated, gratuitous guarantor, whose obligations were not to be extended by implication or construction. (*Id.*) We have reviewed the cases both parties cite, and agree with seller that the trial court committed an error of law under the facts of this case.

¶ 12 "Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform." *Continental Bank v. Axler*, 353 Pa.Super. 409, 510 A.2d 726, 729 (1986) (citations omitted). "Usually, suretyship problems arise because the three-party structure of a suretyship becomes dynamic rather than remaining static." *Id.* "Cognizant of the problems posed by the three-party composition of suretyships, Pennsyl-

vania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected." *Id.* (citations omitted).

 ¶ 13 As the *Continental Bank* court continued, "A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." *Id.*, citing *Koch v. Moyer*, 103 Pa.Super. 270, 158 A. 198 (1931); Restatement of Security § 128, cmt. d. Furthermore, Pennsylvania courts have consistently differentiated between gratuitous (uncompensated) sureties and sureties who are compensated:

> While we have held that in cases of corporate sureties the bond is to be strictly construed in favor of the obligee, we have also held that, when obligations of suretyship or indemnity are assumed by individuals without pecuniary compensation, their obligations are not to be extended by implication or construction. Their liability is strictissimi juris.[2]

*Barratt v. Greenfield*, 137 Pa.Super. 310, 9 A.2d 188, 189 (1939). More recently, this court stated, "Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged." *Continental Bank*, 510 A.2d at 729 (citations omitted). In contrast, "[a] compensated surety is discharged only if, without the surety's consent, there has been a material modification of the creditor-debtor relationship and said modification has substantially in-

creased the surety's risk." *Id.*, citing Restatement of Security § 128(b) (other citation omitted); accord *Reliance Ins. Co. v. Penn Paving, Inc.*, 557 Pa. 439, 448–449, 734 A.2d 833, 837–838 (1999).

¶ 14 Our review of the testimony in this case compels us to conclude that surety was not, as the trial court found, a gratuitous (uncompensated) surety. While it is true that surety testified he had not been compensated for signing the guaranty, we do not agree that the sole shareholder in a corporation is "uncompensated" when, in exchange for his guarantee, a creditor extends a line of credit to the corporation in which he owns all shares. We rely on *First National Bank of East Conemaugh v. Davies*, 315 Pa. 59, 172 A. 296 (1934), in reaching this conclusion.

¶ 15 In *Davies*, "defendants, who were all but two of the directors of the Navy Smokeless Coal Company, a corporation, became sureties for the payment of obligations issued or assumed by the corporation and, at that time, held by the plaintiff bank." *Id.* at 60–61, 172 A. at 296–297. Some of these obligations, in the form of certificates, were treated by both the bank and the sureties as the corporation's lines of credit. *Id.* at 63, 172 A. at 298.

¶ 16 When the corporation defaulted on its obligations, the bank sought payment from the co-sureties. As the *Davies* court noted, "Defendants, in their brief, contend that, by surrendering the trade acceptances and accepting the note of the corporation for the balance due without their consent, the bank released the sureties." Our supreme court disagreed, however, opining:

> If defendants had been gratuitous sureties (*American Trust Co. v. Louderback*,

---

2. "[T]o be interpreted in the strictest manner." Black's Law Dictionary 1435 (7th ed.1999).

220 Pa. 197, 69 A. 673, 16 L.R.A. (N.S.) 775), the contention would merit consideration; but they, as directors of the coal company and otherwise interested in the transaction leading up to the suretyship contract, are in a different class. As was said in *Cancelmo's Estate,* 308 Pa. 178, 162 A. 454, in such circumstances the rule strictissimi juris does not apply.

*Davies,* 315 Pa. at 64, 172 A. at 298.

¶ 17 Surety in this case, like the co-sureties in *Davies,* was "otherwise interested in the transaction leading up to the suretyship contract[.]" *Id.;* therefore, the rule *strictissimi juris* does not apply. As a result, surety's obligation could only be discharged if a material modification in the creditor-debtor relationship substantially increased his risk. *See Continental Bank,* 510 A.2d at 729. Clearly, such is not the case under the facts before us.

¶ 18 Even assuming *arguendo* that surety in this case was a gratuitous surety, we would find, as did the court in *Continental Bank,* that surety has not made a threshold showing of a material modification, as this court defined that term in *Continental Bank.* While it is true that the guaranty named Standard Distributors, not seller, as the creditor, seller was the sole shareholder in Standard Distributors, whose assets, including accounts receivable, were assigned to seller when Standard Distributors was dissolved. Nothing in the guaranty precluded its assignment. Furthermore, buyer's obligations and surety's liability remained exactly the same after the assignment as they had been before: to pay for the same sorts of goods Standard Distributors had previously delivered within ten days of delivery by seller. (Confidential Credit Application and Agreement, Plaintiff's Exhibit A.) [3]

¶ 19 While we have found no Pennsylvania cases directly addressing whether a creditor's assignment of a debt to another creditor constitutes a material modification, we find the analysis in *Continental Bank* helpful. In that case, co-sureties, the Axlers, contended that their co-suretyship was discharged when they sold their interest in the debtor corporation, North Broad, to a non-surety. *Continental Bank,* 510 A.2d at 727. This court found, however, that the co-sureties were not discharged because the suretyship agreement they signed provided that the co-sureties waived all notices of North Broad's adverse change of financial condition and any other fact that might materially increase their risk, and that they would be obligated for the liabilities of any other company that might be a successor to North Broad. The agreement further provided that the co-sureties' suretyship would continue until the co-sureties paid all of debtor corporation's liabilities. *Id.* at 730.

¶ 20 Similarly, in this case, the unconditional guaranty surety signed provided that it "shall continue notwithstanding any change in the form of such indebtedness or renewals or extensions granted by Standard Distributors, Inc, without the necessity of obtaining [surety's] consent." The guaranty also waived notice of acceptance of the guaranty by Standard Distributors, and waived notice of default or non-payment. While the guaranty did not contain language obligating surety for the liability of a successor corporation as did the *Continental Bank* guaranty, we do not find this distinction critical. In *Continental Bank,* the co-sureties were assuming the

---

**3.** Buyer could also return unwanted or damaged goods and receive credit for them.

(Notes of testimony, 9/20/00 at 32.)

liability of the **debtor corporation's** successors, a material modification that could increase the co-sureties' risk and would therefore require express consent. In this case, in contrast, the surety was not asked to assume the liability of a successor corporation; he was merely asked to honor the same liability he originally assumed on behalf of debtor to the **creditor corporation's** successor. Thus, this case, unlike the facts in *Continental Bank*, does not present "a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." *Continental Bank*, 510 A.2d at 727.

¶ 21 For all of the foregoing reasons, we are constrained to vacate the judgment and remand for entry of judgment in favor of seller in an amount to be determined by the trial court.

¶ 22 Judgment in favor of appellees is vacated. Case is remanded for entry of judgment in favor of seller in an amount to be determined by the trial court. Jurisdiction is relinquished.