J-A10040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LAWRENCE R. NEWMAN T/D/B/A BRIAR CLIFF FINANCIAL SERVICES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL DESALVO, ANTHONY J. RAZZANO AND KATIE RAZZANO | |
| Appellees | No. 817 WDA 2015 |

Appeal from the Judgment Entered June 16, 2015
In the Court of Common Pleas of Lawrence County
Civil Division at No(s): 1059 of 2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED JUNE 09, 2016**

Appellant, Lawrence R. Newman t/d/b/a Briar Cliff Financial Services, appeals from the judgment entered in the Lawrence County Court of Common Pleas in favor of Appellees, Anthony J. Razzano and Katie Razzano.[1]  We affirm.

The trial court opinion set forth most of the relevant facts and procedural history of this case as follows:

> 1.   In 2007, …Michael DeSalvo ["DeSalvo"] started a construction business and was interested in purchasing property from which he could conduct business.

_____

[1] A default judgment was entered against Michael DeSalvo on June 20, 2011.  Mr. DeSalvo is not a party to this appeal.

2.     [Appellee] Anthony J. Razzano…told DeSalvo about a parcel of commercial property [the "property"] that was owned by [Anthony and Katie Razzano's] company, Razzano Holdings, LLC, and was located in Shenango Township, Lawrence County, Pennsylvania.  This vacant land was assessed for tax purposes at $16,000.00.

3.     Sometime before November 7, 2007, DeSalvo and [Mr.] Razzano…entered into an arm's length agreement whereby DeSalvo would purchase the property for $25,000.00, $16,000.00 of which he would obtain through a loan.

4.     [Mr.] Razzano introduced DeSalvo to [Appellant], Lawrence R. Newman, who trades and does business as Briar Cliff Financial Services…, in order to obtain a loan.

5.     On November 7, 2007, DeSalvo executed a mortgage note and mortgage to [Appellant].  The note is in the amount of $16,000.00 at a [13%] interest rate and 18% default rate.  The note provides for monthly payments of $219.94 for a period of 60 months beginning January 1, 2008, and a final balloon payment of $12,220.93 on December 1, 2012.

6.     [The] Razzanos executed a Guarantee and Suretyship Agreement (the "guarantee") under which they agreed to "the prompt and punctual payment and performance of all of [DeSalvo's] obligations to [Appellant.]"  The guarantee provided that [the] Razzanos "indemnify, protect and hold [Appellant] harmless, and will pay to [Appellant] on demand all costs and expenses (including reasonable counsel fees) which may be incurred in the enforcement of any liability of [DeSalvo], or any of the rights of [Appellant] against [the Razzanos]."

7.     DeSalvo experienced a lack of growth in his company and immediately failed to make timely monthly payments to [Appellant].

8.     On January 12, 2009, judgment was entered by confession against…DeSalvo and in favor of [Appellant] at docket number 10040 of 2009, C.A. in the Lawrence County Court of Common Pleas.

9.     The parties stipulated that [Mr.] Razzano paid [Appellant] a total of $1,800.00 which cured DeSalvo's default during the [period from October 2008 to February 2009]. As a result, on March 16, 2009, the case at docket number 10040 of 2009, C.A. was settled and discontinued without prejudice.

10.    [Appellant] excused DeSalvo from making the March 2009 payment….

11.    [Mr.] Razzano, as guarantor/surety, made regular payments of approximately $220.00 to [Appellant] from April 2009 through September 2010[.]   [Mr.] Razzano suggested to DeSalvo that [Appellant] may be willing to hire DeSalvo to work on [Appellant's] properties and credit the work against the debt, and DeSalvo performed construction work for [Appellant] on four different projects identified as the following: Main Medical, Riverview, Lower Burrell, and South Park.

12.    While DeSalvo testified that he had an oral agreement with [Appellant] whereby he would not charge the full price for this work and [Appellant] would credit the difference between the fair market value of the work performed and the charges actually made toward the balloon payment obligation, this was denied by [Appellant], and as the statement is self-serving and DeSalvo has no records to substantiate it, the [c]ourt finds this allegation not proven.

13.    [Appellant] introduced…an accounting of the payments [Appellant's] business, Briar Cliff [Financial Services], LLC, rendered to DeSalvo. The accounting shows that [Appellant] issued checks to DeSalvo for the Main Medical and Review projects from September 4, 2009 to March 3, 2010, totaling [$13,721.43]. [Appellant] also issued checks to DeSalvo for the Lower Burrell project on April 28, 2010, for $1,900.00; and [Appellant] issued checks for the South Park project on September 21, 2009, September 30, 2009, October 13, 2009, for $4,500.00, $3,000.00, and $100.00, respectively.

14.    Although neither party presented expert testimony,

DeSalvo testified that the fair market value for the construction he performed totaled approximately $50,000.00 and that [Appellant] agreed that the work would pay the amount owed under the balloon payment. As stated above this allegation was not proven.

15. [Mr.] Razzano had no further contact with [Appellant] until [Appellant] filed the Complaint in the instant case.

16. Sometime in…2010, …DeSalvo ceased performing construction work for [Appellant] and relocated to Tennessee.

17. In 2011 [Appellant] had a phone conversation with DeSalvo in which he informed DeSalvo that the property was scheduled to be sold for unpaid taxes. DeSalvo stated that he had no further interest in the property.[2] [Appellant] obtained a tax deed from the Tax Claim Bureau of Lawrence County for the property on October 3, 2011 in exchange for $1,000.00. No notice of the tax sale or of the purchase by [Appellant] was given to [the Razzanos].

18. [Appellant] filed a Complaint against [DeSalvo and the Razzanos] on February 2, 2011.

19. DeSalvo failed to respond to the Complaint, and [Appellant] filed a *praecipe* to enter default judgment against him in the amount of $19,181.14.[3]

20. On June [20], 2011, default judgment was entered by the Prothonotary of Lawrence County against DeSalvo in the above amount.

(Trial Court Opinion, filed January 5, 2015, at 1-4) (internal citations to the record omitted).

_____

[2] Appellant successfully bid $1,000.00 for the property at the tax sale, which occurred in May 2011.

[3] The Razzanos filed their answer to the complaint on June 6, 2011.

The court conducted a bench trial on October 27, 2014. On January 5, 2015, the court entered a verdict in favor of the Razzanos and against Appellant. Appellant timely filed a post-trial motion on January 15, 2015. On April 21, 2015, the Razzanos filed a motion to conform pleadings to evidence, to add any defenses available to the Razzanos based on the evidence presented at trial, including the defense of "discharge." On May 1, 2015, the court denied Appellant's post-trial motion and granted the Razzanos' motion to conform pleadings to evidence. Appellant filed a premature notice of appeal on May 21, 2015. The court entered final judgment in favor of the Razzanos on June 16, 2015.[4] The court did not order Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises the following issues for our review, which we have reordered for purposes of disposition:

_____

[4] Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. *See generally **Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 516 (Pa.Super. 1995) (*en banc*). Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction. ***Drum v. Shaull Equipment and Supply, Co.***, 787 A.2d 1050 (Pa.Super. 2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735 (2002). Here, Appellant filed a notice of appeal prematurely on May 21, 2015, prior to the entry of judgment. Thus, Appellant's notice of appeal relates forward to June 16, 2015, the date judgment was entered. *See* Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry). Hence, no jurisdictional defects impede our review.

WHETHER THE TRIAL COURT ERRED ALLOWING THE RAZZANOS TO PRESENT THE AFFIRMATIVE DEFENSE OF "WAIVER"?

WHETHER THE TRIAL COURT ERRED BY ALLOWING THE RAZZANOS TO PRESENT ANY AFFIRMATIVE DEFENSES?

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT [APPELLANT] "SURRENDERED" OR "IMPAIRED" COLLATERAL TO DESALVO?

WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS A "MATERIAL MODIFICATION" OF THE TERMS OF THE RELATIONSHIP BETWEEN [APPELLANT] AND DESALVO?

WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE RAZZANOS WERE "GRATUITOUS" OR "UNCOMPENSATED" SURETIES?

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT [APPELLANT'S] DEMAND FOR A JUDGMENT WAS "UNCONSCIONABLE"?

(Appellant's Brief at 7).

In issues one and two, Appellant argues the Razzanos failed to raise "discharge"[5] or any other affirmative defense in their answer and new matter. Appellant asserts the Razzanos did not amend their new matter to include the defense of discharge at any time before or during trial, so it is waived. Appellant further contends the Razzanos were barred from raising any affirmative defense due to the entry of default judgment against Mr.

_____

[5] Appellant's brief mistakenly refers to the Razzanos' discharge defense as a "waiver" defense. The Razzanos, however, claimed their surety obligation was discharged by Appellant's purchase of the property at the tax sale.

DeSalvo. Appellant maintains the judgment against Mr. DeSalvo operated as *res judicata* against the Razzanos because the Razzanos' liability was contingent on Mr. DeSalvo's liability under the mortgage note. Appellant concludes the court erred when it permitted the Razzanos to raise any affirmative defense not pled in their responsive pleading. We disagree.

Our standard of review of a judgment following a non-jury trial is as follows:

> We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial [court] in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

***Good v. Holstein***, 787 A.2d 426, 429 (Pa.Super. 2001), *appeal denied*, 568 Pa. 738, 798 A.2d 1290 (2002) (citation omitted).

> When this Court reviews the findings of the trial [court], the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
>
> The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to the fact by the trial court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

*Piston v. Hughes*, 62 A.3d 440, 443 (Pa.Super. 2013) (internal citations omitted).

"[A]n affirmative defense pertains to a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's…claim, even if all the allegations in the complaint are true." *Reott v. Asia Trend, Inc.*, 618 Pa. 228, 240, 55 A.3d 1088, 1095 (2012). Generally, "affirmative defenses…must be pleaded in a responsive pleading under the heading 'New Matter.'" *Dilauro v. One Bala Avenue Associates*, 615 A.2d 90, 92 (Pa.Super. 1992) (citing Pa.R.C.P. 1030). Affirmative defenses not raised in new matter are generally waived pursuant to Pa.R.C.P. 1032. *Iorfida v. Mary Robert Realty Co., Inc.*, 539 A.2d 383, 386 (Pa.Super. 1988), *appeal denied*, 520 Pa. 576, 549 A.2d 136 (1988). Nevertheless, Pennsylvania Rule of Civil Procedure 1033 states:

> **Rule 1033.  Amendment**
>
> A party, either by filed consent of the adverse party **or by leave of court**, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading.  The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense.  **An amendment may be made to conform the pleading to the evidence offered or admitted.**

Pa.R.C.P. 1033 (emphasis added).

"Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the

proceedings unless there is an error of law or resulting prejudice to an adverse party." **Werner v. Zazyczny**, 545 Pa. 570, 584, 681 A.2d 1331, 1338 (1996). "Prejudice that would prevent the grant of an amendment must be…something more than a detriment to the other party since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the position of the adverse party." **Carpitella by Carpitella v. Consolidated Rail Corp.**, 533 A.2d 762, 763-64 (Pa.Super. 1987). "[T]he lateness of a proposed amendment is only to be considered insofar as it presents a question of prejudice to the opposing party. It has been consistently held that 'unreasonable delay,' by itself, is an insufficient ground upon which to base a denial of an amendment motion." **Horowitz v. Universal Underwriters Ins.**, 580 A.2d 395, 399 (Pa.Super. 1990), *appeal denied*, 527 Pa. 610, 590 A.2d 297 (1991). **See also Dilauro, supra** (stating trial court properly instructed jury on assumption of risk even though defendant did not raise defense in responsive pleading, where facts indicated assumption of risk would be central issue in case; court in effect permitted amendment of defendant's answer on court's own motion); **Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.**, 496 A.2d 840 (Pa.Super. 1985) (holding trial court did not err when it permitted plaintiff to amend complaint to state cause of action based upon breach of oral novation, where defendant first raised issue of novation and presented testimony regarding

meeting at which purported novation had occurred).

"The doctrine of *res judicata* holds that a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." **Dempsey v. Cessna Aircraft Co.**, 653 A.2d 679, 680-81 (Pa.Super. 1995) (*en banc*), *appeal denied*, 541 Pa. 631, 663 A.2d 684 (1995). "Application of the doctrine of *res judicata* requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties." **Id.** at 681.

Instantly, the trial court reasoned as follows:

During the course of the trial and in [Appellant's] case in chief, [Appellant's] counsel asked [Appellant]:

Q. Sir, there was a reference a moment ago in [the Razzanos' counsel's] opening statement about the fact that you have, in fact, acquired this property – the subject property?

A. Yes.

Q. Is it a vacant lot?

A. Yes.

Q. Where is it located?

A. On 65 near the corner of 422.

Q. Did you acquire the property through a mortgage foreclosure?

A. Tax -- tax sale.

Q.    How did you acquire the property?

A.    I bid at the tax sale.

Q.    Okay, so you didn't use a mortgage foreclosure process to obtain this property?

A.    No.

Q.    Okay, and how much did you pay at the tax sale?

A.    $1,000.

Q.    Was the public able to bid on this property?

A.    Yes.  Somebody else bid $500.

[N.T. Trial, 10/27/14, at 24-25].

The purchase by [Appellant] at [the] tax sale of the property in question[,] which was the subject of a mortgage loan from [Appellant] to [Mr.] DeSalvo[,] is the single fact upon which the court determined that [the Razzanos] as sureties were discharged from any further liability.  [The Razzanos] did not present any of the evidence concerning [Appellant's] purchase of the property at tax sale.  The evidence of the purchase was presented by [Appellant] as hereinabove stated.  As such there is no issue of failure to plead an affirmative defense. [Appellant] cannot present the evidence on which the court relies and then complain that the evidence was admitted.

(Trial Court Opinion, filed May 1, 2015, at 1-2).  We agree that the Razzanos' initial failure to plead the affirmative defense of discharge in their answer and new matter was not fatal under these circumstances.  The tax sale occurred after Appellant had filed the complaint, so the complaint did not refer to it.  There also is no evidence that prior to filing a responsive

- 11 -

pleading, the Razzanos otherwise knew Appellant had acquired the property at a tax sale. Appellant's own testimony regarding the purchase of the property introduced the evidence underlying the Razzanos' discharge defense.[6] Following the close of evidence, the Razzanos argued in their trial memorandum that they were discharged from liability as sureties for Mr. DeSalvo's mortgage debt based on Appellant's acquisition of the collateral, *i.e.*, the property. In a motion for post-trial relief, Appellant claimed the Razzanos had waived that defense. The Razzanos, in turn, successfully sought to conform the pleadings to the evidence, including the addition of the affirmative defense of discharge. Appellant fails to explain how the Razzanos' amendment of their answer and new matter prejudiced Appellant. Appellant was the first party to present evidence supporting the Razzanos' discharge defense and did not claim unfair surprise. Additionally, the timing of the Razzanos' motion to amend, absent more, is insufficient to establish prejudice. ***See Horowitz, supra***. Based on the foregoing, we conclude the court properly allowed the Razzanos to conform their pleadings to the evidence presented at trial. ***See Werner, supra***.

Additionally, the default judgment against Mr. DeSalvo did not trigger

_____

[6] Contrary to the statement of the trial court, the Razzanos also presented testimony regarding Appellant's purchase of the property. (***See*** N.T. Trial at 66-67). Nevertheless, at that point, Appellant already had testified that he bought the property. Mr. Razzano's testimony was cumulative of the evidence first presented by Appellant. Thus, the trial court's misstatement does not affect our analysis.

the doctrine of *res judicata* and preclude the Razzanos from raising any defenses. Mr. DeSalvo and the Razzanos are separate parties. Further, the nature of Appellant's cause of action against Mr. DeSalvo as principal borrower was distinct from Appellant's claims against the Razzanos in their capacity as sureties (and whether the Razzanos had any meritorious defenses in their capacity as sureties). The default judgment against Mr. DeSalvo established only his individual liability for the mortgage debt. Therefore, the doctrine of *res judicata* is inapplicable to Appellant's cause of action against the Razzanos. **See Dempsey, supra**.

In issue three, Appellant argues the property would have been lost to a third-party buyer if Appellant had not purchased it at the public tax sale, which protected and preserved the property as collateral. Appellant asserts the Razzanos had no "security" in the property under the mortgage note, and Appellant's purchase of the property did not impair any legal right of the Razzanos. Appellant concludes the trial court erred when it decided Appellant had surrendered or impaired the collateral under the note, which discharged the Razzanos' surety obligations. We disagree.

The following general principles govern a surety arrangement:

> Where there is a surety relationship, an obligee…is entitled to performance of a contractual duty by the principal or alternatively, if the principal defaults, by the principal's surety. The surety, therefore, stands in the shoes of the principal and must complete any obligation due the obligee at the time of default.

**Kiski Area School Dist. v. Mid-State Surety Corp.**, 600 Pa. 444, 450,

967 A.2d 368, 371 (2008). "Attendant to this special relationship are duties of the creditor to the surety." *Good, supra* at 430. "[W]here a surety has performed upon the default of the principal debtor, the surety has a right to reimbursement from the principal debtor and is subrogated to the rights of the creditor." *Reuter v. Citizens & Northern Bank*, 599 A.2d 673, 677 (Pa.Super. 1991). "[A] release or impairment of collateral defeats in whole or part the surety's right to look to such security for recourse should he have to pay the principal debt." *Keystone Bank v. Flooring Specialists, Inc.*, 513 Pa. 103, 114, 518 A.2d 1179, 1185 (1986). "[I]f a creditor surrenders or impairs collateral which serves as security for the principal's debt, the surety is discharged from his obligation to the extent that the collateral would have produced sufficient funds to pay the debt in whole or in part." *First Federal Sav. & Loan Ass'n of Pittston v. Reggie*, 546 A.2d 62, 65 (Pa.Super. 1988). *See also Franklin Savings & Trust Co. of Pittsburgh v. Clark*, 283 Pa. 212, 129 A. 56 (1925) (stating: "[W]hen a creditor has in his possession the property of a principal debtor, out of which his debt may be paid, and does not apply it to the payment of the debt, but gives it up, a surety is discharged; or if the property be not actually in his hands, or he did not really assent to its passing from him, yet if, by the use of reasonable diligence, the property may be obtained and applied to the debt, his duty is to obtain and so use it"); *First Nat. Bank & Trust Co. of Ford City v. Stolar*, 197 A. 499 (Pa.Super. 1938) (stating impairment of collateral

discharges surety to extent of impaired value even if surety was not in position to enforce subrogation at time of impairment).

Instantly, Mr. DeSalvo obtained a mortgage loan from Appellant to purchase the property from Razzano Holdings, LLC. The Razzanos executed a surety agreement with Appellant with respect to Mr. DeSalvo's obligations under the mortgage note. Mr. DeSalvo subsequently defaulted on the mortgage, and the Razzanos cured the default with an agreed-upon payment to Appellant. Mr. DeSalvo again failed to make payments, and Appellant filed the instant complaint against Mr. DeSalvo and the Razzanos in February 2011. The property also was tax delinquent. After he filed his complaint against Mr. DeSalvo and the Razzanos, Appellant purchased the property at a public tax sale in May 2011 for $1,000.00. The Razzanos had no notice of the tax sale. The property served as collateral securing Mr. DeSalvo's mortgage debt. As sureties, the Razzanos were entitled to subrogation to Appellant's creditor rights in the event they paid off Mr. DeSalvo's debt, including the right to the collateral. After Appellant purchased the property at the tax sale, however, he failed to apply its value to Mr. DeSalvo's debt, and the Razzanos could no longer exercise their subrogation rights to obtain the property. Therefore, Appellant's actions impaired the entire value of the collateral and discharged the Razzanos' obligation as sureties to the extent of the impairment. *See Franklin Savings & Trust Co. of Pittsburgh, supra*; *First Federal Sav. & Loan Ass'n of Pittston*. The property was

- 15 -

valued at $25,000.00 by an "arm's length" transaction between Appellant and Mr. DeSalvo in 2007.[7] The tax sale occurred in May 2011. According to Appellant's own documentary evidence, Mr. DeSalvo's mortgage debt amounted to $17,703.69 as of June 2, 2011. Thus, the impaired collateral would have provided sufficient funds to pay off the entire debt. Therefore, the trial court properly concluded the Razzanos were completely discharged from their obligation as sureties on behalf of Mr. DeSalvo. **See id.**

In issues four and five, Appellant argues the Razzanos' suretyship materially benefitted the Razzanos' company because it facilitated the company's sale of the property to Mr. DeSalvo. Appellant contends the Razzanos were not gratuitous or uncompensated sureties in light of their material interest in the loan to Mr. DeSalvo. Appellant asserts the Razzanos could only be discharged if, without their consent, there was a material modification of the creditor-debtor relationship that substantially increased the Razzanos' risk. Appellant claims the creditor-debtor relationship between Appellant and Mr. DeSalvo was not materially modified by Appellant's purchase of the property at a tax sale. Appellant maintains Mr. DeSalvo had no involvement in Appellant's decision to buy the property, and no evidence shows the purchase of the property had any purpose other than

_____

[7] Appellant produced no evidence regarding any change in the property's value since that time. Mr. Razzano also presented testimony that he valued the property at $35,000.00 or $40,000.00 at the time of the sale to Mr. DeSalvo.

to preserve the collateral. Appellant further argues there was no evidence that the tax sale purchase substantially increased the risk borne by Mr. DeSalvo, who had already defaulted on the note. Appellant concludes the court erred when it determined the Razzanos' surety obligation was discharged on the grounds that they were gratuitous sureties and Appellant's purchase of the property materially modified the contractual relationship between Appellant and Mr. DeSalvo. We disagree.

"[W]here the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected." *J.F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1274 (Pa.Super. 2002).

> A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability. Furthermore, Pennsylvania courts have consistently differentiated between gratuitous (uncompensated) sureties and sureties who are compensated:
>
>> While we have held that in cases of corporate sureties the bond is to be strictly construed in favor of the obligee, we have also held that, when obligations of suretyship or indemnity are assumed by individuals without pecuniary compensation, their obligations are not to be extended by implication or construction. Their liability is *strictissimi juris*.
>
> [W]here, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged. In contrast, a compensated surety is discharged only if, without the surety's consent, there has

> been a material modification of the creditor-debtor relationship and said modification has substantially increased the surety's risk.

*Id.* (internal citations and quotation marks omitted) (holding sole shareholder in corporation was not gratuitous surety where, in exchange for his guarantee, creditor extended line of credit to corporation).

Instantly, the trial court reasoned as follows: "[The] Razzanos are gratuitous sureties. [The] R[a]zzanos are discharged from any liability on the Guarantee and Suretyship Agreement as [Appellant] has taken for his own benefit the collateral, thus drastically altering the relationship between [Appellant] and DeSalvo." (Trial Court Opinion, filed January 5, 2015, at 7). We agree. Appellant's acquisition of the property effectively eliminated the collateral securing the loan and materially modified the creditor-debtor relationship. The Razzanos did not consent to Appellant's purchase of the property. Consequently, as gratuitous sureties, the Razzanos were completely discharged from performance of Mr. DeSalvo's obligations to Appellant. *See id.* The Razzanos' indirect benefit from the loan transaction did not make them compensated sureties. The facts of *J.F. Walker Co. supra*, are distinguishable because the surety in that case was also the sole shareholder of the corporation that received the guaranteed line of credit. Moreover, the unavailability of the collateral to the Razzanos substantially increased their risk as sureties. Therefore, the Razzanos would be discharged even if they were classified as compensated sureties. *See id.*

Based on the foregoing, the trial court properly concluded the Razzanos' surety obligations were completely discharged on two grounds: (1) Appellant's impairment of the collateral; and (2) material modification of the creditor-debtor relationship between Appellant and Mr. DeSalvo. Accordingly, we affirm.[8]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2016

_____

[8] In issue six, Appellant disputes the court's use of the word "unconscionable" and cites law pertaining to the defense of unconscionability in contract law. The court stated: "Now [Appellant] seeks to collect the money loaned and keep the land. Such a result is not only unconscionable but also not sanctioned by the law." (Trial Court Opinion, filed January 5, 2015, at 7). The context of the statement makes clear the court was not using the term "unconscionable" in the strict contract law sense but simply emphasizing the unjust result that would occur if the court granted Appellant's requested relief. Therefore, we give this issue no further attention.