J-A29025-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| PORT VUE PLUMBING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RITE FENCE AND ANTHONY S. | : | No. 677 WDA 2019 |
| NEINO, INDIVIDUALLY | : | |

Appeal from the Judgment Entered on May 2, 2019,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD-17-013715.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.: FILED MARCH 30, 2020

Port Vue Plumbing appeals from the judgment entered in favor of Rite Fence[1] and Anthony S. Neino (collectively "Subcontractor"), in this breach of contract action. After careful review, we affirm.

In 2015, Port Vue won a bid to be the general contractor under a construction contract with the Westmoreland Fayette Municipal Sewage Authority for the construction of a Wastewater Treatment Facility and the Swedetown Pump Station. As part of the project, Port Vue was required to supply and construct a perimeter fence with gates around the Treatment Plant. In December 2016, Port Vue retained Subcontractor to install this fence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Rite Fence is a fictitious business name of a sole proprietorship owned and operated by Anthony S. Neino.

Port Vue agreed to supply the fence materials and concrete for the project; Subcontractor agreed to provide labor and equipment for installation of the fence. Port Vue agreed to pay Subcontractor $38,000.00 for its services. On December 21, 2016, Port Vue gave Subcontractor a purchase order, along with an initial payment of $5,000.00.

Port Vue and the Authority's Engineer provided Subcontractor with the specifications for the fence installation. In particular, the specifications required that corner post holes be excavated and filled with concrete at a width of 12" and a depth of 30", and that line post holes be excavated and filled with concrete at a width of 9" and a depth of 30".

Shortly thereafter, on December 26, 2016, Subcontractor began construction of the fence at the Treatment Plant. As work progressed, Port Vue made progress payments on January 3, 2017 ($10,000.00) and on February 1, 2017 ($7,500.00). At the time of these payments, no issues were raised about Subcontractor's performance.

On February 27, 2017, the Authority's Engineer notified Port Vue that some of the line posts were wobbly. Subcontractor acknowledged that there were posts near the gravel parking lot that were unstable; the condition of the soil in that area prevented the posts from staying in place with their concrete footings. At that point, Subcontractor had completed about 2/3 of the work.

Port Vue and the Authority's Engineer proceeded to check several posts. Because the project was behind schedule and funds for inspection were low, the Authority authorized only limited inspection. Upon inspection, Port Vue and the Authority's Engineer allegedly found posts with insufficient concrete or hole depth. Because of this deficiency, the Authority's Engineer determined that 200 posts had to be removed and reinstalled. Subcontractor disputed that the work did not comply with the contract specifications and rejected this resolution, but was willing to try to work out an alternative solution.

One day later, on April 11, 2017, the Authority directed that 200 posts be removed and reset. The following day, the Authority's Engineer sent Port Vue a letter notifying it that the posts were to be removed and replaced.

On April 13, 2017, Port Vue hired another contractor to reinstall the fence posts once Port Vue had removed them. The next day, Port Vue notified Subcontractor that it intended to take legal action against it for failing to install the fence posts in accordance with the specifications and complete the project.

Port Vue filed suit against Subcontractor on October 5, 2017, asserting claims for breach of contract and unjust enrichment, and seeking damages in the amount of $34,458.27.

On March 27 and 28, 2019, the court held a bench trial. Thereafter, on April 8, 2019, the trial court ruled in favor of Subcontractor and against Port Vue on both its breach of contract and unjust enrichment claims.

Port Vue filed post-trial motions asking the trial court to set aside the verdict and direct judgment in Port Vue's favor, which the trial court denied.

Port Vue timely appealed. Both Port Vue and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Port Vue raises three issues on appeal for our review:

I. Whether the trial court erred in refusing to enter Port Vue's photographs into evidence?

II. Whether the trial court erred in ignoring competent evidence favorable to Port Vue and weighing the testimony and evidence at trial?

III. Whether the trial court erred in entering a verdict in favor of Subcontractor and against Port Vue?

Port Vue's Brief at 2.

In its first issue, Port Vue contends that the trial court erred in refusing to admit certain photographs into evidence at trial. According to Port Vue, the pictures depicted various line posts and holes after the line posts had been removed. Port Vue claims the photos showed insufficient concrete was used to set the posts. It claims the trial court should have admitted these photos as evidence to show that Subcontractor failed to use the required amount of concrete and, therefore, breached the agreement. Port Vue's Brief at 11.

Generally, we note that our standard of review for evidentiary rulings is a narrow one:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

Reott v. Asia Trend, Inc., 7 A.3d 830, 839 (Pa. Super. 2010), affirmed, 55 A.3d 1088 (2012).

For a document or photograph to be admissible trial, it must first be authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a); see also Zuk v. Zuk, 55 A.3d 102, 112 (Pa. Super. 2012). More specifically, it is well-established that "[b]efore a photograph is admissible it must be verified[.] Such verification must be by someone who has sufficient knowledge to state that it fairly and truthfully represents the object or the place reproduced." Taylor v. Modena, 87 A.2d 195, 196 (Pa. 1952) (citations omitted).

The trial court denied admission of the photographs, because Port Vue's witnesses were unable to state who took the photos, at what time during the course of construction the photos were taken, and where specifically on the engineering plan each photographed post was located. Trial Court Opinion, 7/17/19, at 7. Thus, it found the photos could not prove or explain any alleged inadequacy of the depth of the post holes or insufficient amount of concrete. Id.

At trial, the Authority's Engineer testified that the pictures generally represented what they discovered when the posts were removed. Another witness for Port Vue hesitated when stating that the photos were of different holes. However, considering no one could state when or where the photos were taken, the trial court was not convinced that the photos were properly verified as required by Rule of Evidence 901(a). Given the uncertainty about

what the pictures represented, we do not find that the trial court abused its discretion or committed an error of law in refusing to admit the photos into evidence.

Even if the photos were admissible, the trial court's refusal to admit them was not harmful or prejudicial to Port Vue. The trial court explained that although it did not admit the photographs into evidence, it examined the photos and heard the testimony related to them. Id. Therefore, because Port Vue was not prejudiced by this evidentiary ruling, the court's refusal to admit the photos in this bench trial was not reversible error. Port Vue's first issue merits not relief.

In its second issue, Port Vue claims that the trial court's verdict was against the weight of evidence. Specifically, Port Vue claims that the trial court ignored competent evidence favorable to Port Vue in weighing the evidence and rendering its decision. Port Vue's Brief at 14, 16. According to Port Vue, the weight of the evidence clearly favored a finding that Subcontractor utilized insufficient concrete when it installed numerous line posts, and thus, the trial court's verdict should be reversed. Id. at 18.

When reviewing a weight claim, we are mindful of the following principles:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against

the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

In re Estate of Smaling, 80 A.3d 485, 490 (Pa. Super. 2013) (citing Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013)). The trial court may award a judgment notwithstanding the verdict or a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." Samuel–Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 39 (Pa. 2011)(citing Commonwealth v. Cousar, 928 A.2d 1025, 1035–36 (Pa. 2007)).

Typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses, 'will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action." Criswell v. King, 834 A.2d 505, 512 (Pa. 2003). Here, however, a non-jury trial was held. Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury

decision shocked his own conscience. Notwithstanding this, we consider whether the trial court's decision was against the weight of the evidence.

Obviously, the trial court here concluded that its non-jury decision was not against the weight of the evidence. In reaching this conclusion, the trial court reviewed the evidence presented by the parties concerning whether the posts had insufficient concrete or hole depth and whether any breach of contract caused the wobbly fence posts. The trial court found that Port Vue failed to adequately identify whether holes were not dug to specification or had insufficient concrete. Instead, the trial court credited Subcontractor's testimony regarding the location and cause of the wobbly posts and relied on it in weighing the evidence.

The trial court further credited Subcontractor's testimony as to why it was unable to complete the project. The trial court found that, after the wobbly posts were discovered, the decision to remove 200 posts was arbitrary, particularly in light of Subcontractor's contention that no more than 10 posts were wobbly. Additionally, Port Vue did not give Subcontractor adequate notice of the problem or an opportunity to cure the alleged defect. Port Vue also did not submit a change order to the Authority for additional work, assuming that the original specifications were inadequate to support the line posts in some areas. While Subcontractor was waiting to hear from Port Vue regarding an alternative resolution, Port Vue immediately went out and hired another contractor to finish the job. Moreover, not only did the replacement

contractor complete the work, but totally ripped out the work Subcontractor had already performed.

Based upon our review of the record and the trial court's consideration of the same, we discern no abuse of discretion in the trial court's rejection of Port Vue's weight of the evidence claim. Here, there was conflicting testimony as to the location and cause of the wobbly fence posts. Additionally, there was conflicting testimony as to whether all 200 posts had to be removed to resolve the problem. A mere conflict in testimony will not suffice as grounds for a new trial. Winschel v. Jain, 925 A.2d 783, 788 (Pa. Super. 2007).

Furthermore, the factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Samuel—Bassett, 34 A.3d at 39. Here, the trial court acknowledged that its decision in this case turned on credibility. The trial court found Subcontractor more credible, and resolved any conflicts in the testimony in its favor. We further note that the trial court considered the evidence as a whole, not just the limited excerpts of testimony Port Vue has identified in arguing this issue. For these reasons, Port Vue second claim challenging the weight of the evidence warrants no relief.

In its third issue, Port Vue claims that the trial court erred in entering a verdict in favor of Subcontractor and against Port Vue. Essentially, Port Vue argues that the evidence established that Subcontractor breached the contract or was unjustly enriched. According to Port Vue, Subcontractor failed to properly excavate and fill with concrete the line post holes as required by the

contract specifications.  Consequently, Port Vue had to remove a significant portion of the fence and hire another contractor to reconstruct it.  Additionally, Port Vue paid Subcontractor $22,500 for work it claims Subcontractor failed to perform.  Therefore, Port Vue argues the trial court should have entered judgment in its favor.  Port Vue's Brief at 19-21.

> Our scope and standard of review of these claims is well-defined:
>
> Our appellate role in cases arising from non-jury trial [decisions] is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner.

J.J. DeLuca Company, Inc. v. Toll Naval Associates, 56 A.3d 402, 410 (Pa. Super. 2012) (quotation marks, formatting, and citations omitted).

The trial court ruled against Port Vue for two reasons.  First, the trial court found that Port Vue failed to prove that Subcontractor's work did not comply with the contract specifications, and thus did not breach its contract with Port Vue.  See Trial Court Opinion, 7/17/19, at 8.  Second, the trial court found that Port Vue's own conduct excused Subcontractor's continued performance under the contract.  Id. at 8-9.

To establish a breach of contract claim, a plaintiff must prove: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages.  J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002).

Here, viewing the evidence in the light most favorable to Subcontractor as the verdict winner, we conclude that the record supports the trial court's finding that Port Vue failed to prove its case that Subcontractor did not comply with the contract specifications. Therefore, the trial court correctly concluded that Port Vue failed to establish a breach of contract claim against Subcontractor.[2]

Furthermore, under Pennsylvania law, the conduct of one party that prevents the other from performing is an excuse for non-performance. A party is excused from performance under the contract if the other party's conduct impedes his performance. See Slater v. General Cas. Co. of Am., 25 A.2d 697, 699 (Pa. 1942); see also Liddle v. Scholze, 768 A.2d 1183, 1185 (Pa. Super. 2001).

Similarly, we have held that "a material breach by one party to a contract entitles the non-breaching party to suspend performance." Widmer Eng'g Inc. v. Dufalla, 837 A.2d 459, 467 (Pa. Super. 2003) (emphasis added). "'If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract.'" Id. (quoting Lane Enterprises v. L.B. Foster Co., 700 A.2d 465 (Pa. Super.

_____

[2] Port Vue also asserted a claim for unjust enrichment. However, both parties acknowledged they had a written contract. Additionally, the trial court decided the case under contract principles. Where a written or express contract between the parties exists, the equitable theory of unjust enrichment does not apply. See Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999). We therefore confine our analysis to the contract theories of this case.

1997), rev'd on other grounds, 710 A.2d 54 (Pa. 1998) (internal citations omitted).

Here, viewing the evidence in the light most favorable to Subcontractor as the verdict winner, we conclude that the record supports the trial court's finding that Port Vue's actions prevented Subcontractor from completing the project.

The record also supports the trial court's finding that Port Vue failed to deal with Subcontractor fairly and reasonably. "Every contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract." Giant Food Stores, LLC v. THF Silver Spring Dev., L.P., 959 A.2d 438, 447–48 (Pa. Super. 2008), appeal denied, 972 A.2d 522 (2009) (citation omitted). Under the circumstances of this case, Port Vue's breach was material.[3]

Applying the foregoing legal principles to this case, the trial court did not err in concluding that Subcontractor's non-performance was excused. Port Vue's third issue also warrants no relief.

Judgment affirmed.

_____

[3] We note that the trial court did not specifically state that Port Vue's breach was material. However, we infer that the trial court found it to be material based upon its conclusion that Subcontractor's performance was excused, in part, because of Port Vue's failure deal with Subcontractor in good faith and fair dealing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2020